486 P.2d 618

**STATE of New Mexico, Plaintiff-Appellee,**
v.
**Steven MARES, Defendant-Appellant.**

**No. 561.**

Court of Appeals of New Mexico.

May 28, 1971.

Writ of Certiorari Issued June 25, 1971.

Stanley F. Frost, Tucumcari, David W. Bonem, Clovis, for defendant-appellant.

David L. Norvell, Atty. Gen., Santa Fe, C. Emery Cuddy, Jr., Asst. Atty. Gen., for plaintiff-appellee.

OPINION

HENDLEY, Judge.

Convicted of the unauthorized entry of a dwelling with intent to commit a felony while armed with a deadly weapon contrary to § 40A–16–4(A), N.M.S.A.1953 (Repl.1964) defendant appeals.

We affirm.

Mrs. C. returned home on the evening of October 14, 1969, after a ten day trip. Before retiring that evening she checked and locked all doors and windows. During the early morning hours of October 15, 1969 a forced entry was made into her house. Mrs. C. was awakened and saw a man, wearing no clothes, but with a white towel around his neck, standing near her bed. The man held a long knife. Due to poor lighting Mrs. C. could not see the man's facial characteristics. Mrs. C. persuaded the man to leave and then called the police.

The police arrived and discovered the top window in the utility room broken and the bottom window opened. Shortly, thereafter, the police dusted the area around the window and the formica top and sink which was directly under the broken window. Palm prints were lifted from around the formica sink top and sink molding.

Subsequently on December 29, 1969 palm prints of defendant were made and forwarded to the F.B.I. laboratory along with the lifted prints found October 15, 1969. The testimony of the F.B.I. finger print examiner was to the effect that no two palm prints are the same and that a comparison of the lifted prints showed that they were identical with the right palm print of the defendant.

Mrs. C. testified that defendant and his employer had installed a hot water heater in her home on August 11, 1968 but to her knowledge defendant had not been in her house since that time. Mrs. C. further testified she used the utility room sink " * * from a few times a week to several times a week", that she used it the day before her trip, that she kept " * * * a sponge

by the sink at all times and I always use the sponge to, of course, wipe away any water," and that she wiped the sink " * * with a sponge, cleaned it, all particles of water." Also, " * * * it's scrubbed from time to time with scouring powder."

At the close of the State's case and after defendant rested, defendant moved for a directed verdict on the grounds that:

" * * * the State has not introduced evidence to the extent necessary to support a conviction based on the circumstantial nature of the evidence. * * * "

Defendant contends the trial court erred in overruling the motions.

Defendant frames the issue as " * *, * whether proof that palm prints found in the place where a crime was committed which prints correspond to those of the accused and which prints are found under circumstances that indicate they might have been impressed at a time other than when the crime was committed is sufficient proof of identity standing alone to sustain a conviction. * * * "

It is defendant's contention that when circumstantial evidence is relied upon it must exclude every reasonable hypothesis other than the guilt of the defendant. State v. Easterwood, 68 N.M. 464, 362 P.2d 997 (1961). With this proposition we agree.

Defendant has referred us to several fingerprint cases [Townsley v. United States, 236 A.2d 63 (D.C.App.1967); Gray v. State, 4 Md.App. 155, 241 A.2d 725 (1968); Anthony v. State, 85 Ga.App. 119, 68 S.E. 2d 150 (1951); McClain v. State, 198 Miss. 831, 24 So.2d 15 (1945)]. Those cases are distinguishable on their facts. They deal with areas where the public had access or where there was no showing that the public did not have access or in which the mere presence of defendant would not establish the offense charged.

Here we have undisputed proof of a lapse of 14 months since defendant was legally on the premises—repeated wiping

and "time to time" scrubbing of the area from which the prints were lifted.

"Evidence of fingerprint identification, that is proof of fingerprints corresponding to those of the accused, found in a place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed, may be sufficient to support a conviction in a criminal prosecution. * * *" State v. Helms, 218 N.C. 592, 12 S.E.2d 243 (1940). See also Hack v. Commonwealth, 433 S.W.2d 877 (Ky.Ct. App.1968) wherein the court stated:

"In this case, Hack had been in and around the cocktail lounge prior to the date of the crime and could possibly have left his fingerprints on the door at that time. But the owner testified the door had been washed the day before and following the last time Hack had been present. The jury had every right to believe that testimony. It would necessarily follow then that Hack's fingerprints were not impressed innocently, and the evidence was sufficient to sustain the verdict."

In view of the foregoing, we conclude that there was substantial evidence to sustain the conviction of defendant and that such evidence excluded every other reasonable hypothesis inconsistent with defendant's guilt.

Defendant next contends that the presence of a juror in Mrs. C.'s home during the time when the police were investigating the crime and taking fingerprints denied defendant "a trial by an impartial jury and the right to confrontation and cross-examination."

After trial, defendant learned of Juror Sefcik's presence in Mrs. C.'s home during a part of the police investigation. Defendant filed a motion for a new trial on the ground that Juror Sefcik's involvement precluded a fair trial. A hearing was held and testimony taken.

No record of the voir dire jury examination was made but at the motion for a new trial it was stipulated that defendant's voir dire examination disclosed the fact that Juror Sefcik was a good friend of Mrs. C. for about 22 years, that he had visited and had eaten in her home, that Juror Sefcik did not think this relationship would affect his opinion. It was also stipulated that when the jurors were asked if they had talked to any witnesses or knew of any reason they could not serve on the jury or knew of any reason why they could not render a fair and impartial verdict, Juror Sefcik did not indicate any answer. The record at the motion for a new trial hearing further showed defendant was not limited in his voir dire of the prospective jurors nor did he exercise all of his peremptory challenges.

We fail to see, as a matter of law, how the trial court erred in refusing to grant a new trial. The granting of a new trial, or denial of request therefor, is within the sound discretion of the trial court and the reviewing court will not disturb the decision unless there has been a manifest abuse of discretion. State v. Pope, 78 N.M. 282, 430 P.2d 779 (Ct.App.1967).

The trial court conducted a lengthy hearing on the motion. Both the defendant and the State called witnesses. No evidence was adduced beyond the fact of a 22 year long friendship and visits in the house of Mrs. C., that the juror did not discuss the case with Mrs. C. or the police officers, nor was any evidence discovered at the time in question used at trial. Further, Mrs. C. testified, at trial and at the hearing, that she never could identify the intruder.

We fail to see an abuse of discretion by the trial court. Further, the evidence was not such as to show Juror Sefcik had any special knowledge of the case beyond that brought out on voir dire. There is no factual basis for defendant's contention.

State v. Maes, 81 N.M. 550, 469 P.2d 529 (Ct.App.1970).

Affirmed.

It is so ordered.

SPIESS, C. J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

A dissenting or concurring opinion should be carefully scrutinized by judges, lawyers and the public, because it represents the opinion of the dissenter. In writing his dissent or concurrence, despite his ability and integrity, the dissenter has the freedom of the wind to express his beliefs. It is not subject to review by other associate judges.

I dissent in this case because Mares was found guilty by a palm print without a fair trial by an impartial jury. Guilt beyond a reasonable doubt was a shadow. Nevertheless, Mares was entitled to a fair trial with a fair and impartial jury. This is implicit in the concept of ordered liberty. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App.1967). Mares had no prior criminal record and was employed steadily to the date of trial. He was convicted and sentenced to a term of not less than 10 years nor more than 50 years, and all the penitentiary sentence suspended except the first 8 years on condition.

The basis of this dissent is the silence of a juror on voir dire examination to disclose his visitation with the prosecution witness, the alleged victim, less than 14 hours after the alleged crime was committed. Juror Sefcik was present in the home of Mrs. C. while the police officers were making an investigation of the crime, seeking fingerprints. Thereafter, Sefcik became a juror.

The state and the defendant stipulated to the following facts in reference to the voir dire examination:

1. When juror Sefcik was asked if he knew Mrs. C., he responded that he was a good friend, that he had known her and her husband approximately 22 years and had eaten in their home on many occasions.

2. When juror Sefcik was asked if he thought that relationship would affect his opinion, he said no.

3. When the jurors were asked if they had talked to any of the witnesses or if they knew of any reason why they should not serve on the jury, juror Sefcik did not respond.

4. When all the jurors were asked if there was any reason why, if selected as jurors, they could not render a fair and impartial verdict in the case based on the evidence and law, there was no indication by Sefcik one way or the other.

The burglary occurred on October 15, 1969, at 2:00 a. m. About 4:00 p. m., the same day, police officers came to the home of Mrs. C. in hopes of finding additional, latent impressions. Juror Sefcik was present in the kitchen having coffee with Mrs. C. Mares had no knowledge of this until after the verdict. Just prior to the verdict, Police Chief Moore stated to defense counsel, "Well, maybe one of the jurors knew too much." Defense counsel had no indication of Sefcik's exposure to the case prior to the trial until Police Chief Moore came forward with this statement. The day following the verdict, defense counsel conducted a full investigation and uncovered the facts about Sefcik's presence in the home of Mrs. C. on the afternoon of October 15. That same day, defense counsel filed a motion for a new trial which was subsequently denied after a hearing. At the hearing, the trial court heard the testimony of Mrs. C., but not the testimony of Sefcik, or any other juror. Jurors are not permitted to impeach their verdict after discharge. Skeet v. Wilson, 76 N.M. 697, 700, 417 P.2d 889 (1966). However, an unauthorized communication between a juror and a witness during trial is presumptively prejudicial. State v. McFerran, 80 N.M. 622, 630, 459 P.2d 148 (Ct.App.1969). This same rule should apply to communication between a juror and

a prosecuting witness before trial. The burden shifts to the state to show absence of prejudice. State v. Gutierrez, supra. The state did not overcome this presumption. It is grossly unfair to listen to the victim and not the jurors.

At one time during the jury's deliberation, it requested information of the court. The trial court said he thought the jury stood six to six.

On the record in this case, was Mares accorded a fair trial by an impartial jury?

"Under ancient common law, jurors were selected because of their personal knowledge of the facts. Under the modern doctrine, however, jurors who have such personal knowledge of material facts as will tend to form an opinion based upon bias are regarded as incompetent to sit as jurors even though they may feel they can render an impartial verdict." Kunk v. Howell, 40 Tenn.App. 183, 289 S.W.2d 874, 73 A.L.R.2d 1304 (1956). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961).

In New Mexico, the standard guaranteed for an impartial jury is strong and vibrant. In State v. McFall, 67 N.M. 260, 263, 354 P.2d 547, 548 (1960), Justice Moise said:

"By impartial jury is meant a jury where each and every one of the twelve members constituting the jury is totally free from any partiality whatsoever. * * * Accordingly, the jury which one charged with crime is guaranteed, is one that does not favor one side more than another, treats all alike, is unbiased, equitable, fair and just. If any juror does not have these qualities, the jury upon which he serves is thereby deprived of its quality of impartiality."

First, was Mares' defense counsel guilty of a lack of diligence on voir dire examination about Sefcik's pre-trial exposure to the case? The trial judge gave the answer. "I do not think it was necessary for defendant's counsel to ask if he [Sefcik] had been in the C. home the morning of October 15, 1969." The reason is obvious. The trial judge on voir dire asked the jurors if they had talked to any of the *witnesses* or if they knew of any reason they could not render a fair and impartial verdict; whether there was any reason why they could not render a fair and impartial verdict. Other voir dire examination occurred and some prospective jurors responded. For example:

"THE COURT: Mrs. Aitken, have you heard what purport to be the facts in the case?

"JUROR AITKEN: I have.

"THE COURT: Did what you hear cause you to form an opinion as to the guilt or innocence of the defendant?

"JUROR AITKEN: It has.

"THE COURT: Ma'am?

"JUROR AITKEN: I think it has.

"THE COURT: Is that an impression or opinion?

"JUROR AITKEN: Well, I talked directly with the party concerned.

"THE COURT: And I mentioned this party as a witness here?

"JUROR AITKEN: Yes, sir.

"THE COURT: I see. Then you feel that you do have a fixed opinion one way or the other?

"JUROR AITKEN: It could, it could affect my decision.

"THE COURT: You couldn't lay aside what you heard and try the case from the evidence and the law that the Court gives you?

"JUROR AITKEN: I could try.

"THE COURT: It is, of course, required that the juror's mind be open,

free from any preconceived ideas, and that you don't have to quarrel with setting aside what you heard. You must set it aside, if you can. Sometimes it is humanly impossible and we cannot prejudge a thing. That's what it's called, prejudice, judging a thing before we hear the facts, but sometimes we do form an opinion from what we hear and we cannot lay it aside. If it's going to require evidence to remove what you have in your mind then you probably wouldn't be qualified, because the defendant is presumed to be innocent under our law and the State has to prove him guilty to the jury. You think it will require evidence?

"JUROR AITKEN: It would be very difficult for me not to say that I haven't already formed an opinion.

"THE COURT: Any objection to excusing Mrs. Aitken for cause?

"MR. BREEN: Yes, sir.

"MR. FROST: I have no objection.

"THE COURT: What number is that? Eighteen. You will be excused, Mrs. Aitken. * * *"

Sefcik talked directly with Mrs. C. He remained silent. He had an inviolable duty to disclose his visitation with Mrs. C. regardless of his good faith and honesty. His silence compares with concealment and false answer. See, Juries-New Trial-Discovery of Juror's Disqualification or False Answer on Voir Dire as Ground for New Trial, 7 Natural Resources Journal 415 (1967). This is a criticism of State v. Ortega, 77 N.M. 312, 422 P.2d 353 (1966).

In United States v. Freedland, 111 F. Supp. 852, 853 (D.N.D.1953), the district judge said:

"The answers to questions put by the Court necessarily form the basis for the Court's excusing a juror on its own motion or challenges for cause by the parties and the exercise of peremptory challenges by each side. Necessarily, it is expected and required that jurors in their answers shall be completely truthful and that they shall disclose, upon a *general question*, any matters which might tend to disqualify them from sitting on the case for any reason. It therefore becomes imperative that the answers be *truthful and complete*. False or misleading answers may result in the seating of a juror who might have been discharged by the Court, challenged for cause by counsel or stricken through the exercise of peremptory challenge." [Emphasis added].

Under the rules of the court in this case, the judge examined all the jurors on voir dire. However, there is the same requirement of truthfulness and completeness of the jurors when the attorneys themselves perform this examination.

State v. Ortega, supra, held that actual injury to the defendant must be shown where a juror was disqualified by virtue of having been convicted of an infamous crime. Section 19–1–1, N.M.S.A.1953, stated therein, was repealed in 1969. Now, under §§ 19–1–1 and 19–1–2, any person disqualified or exempt from service does not vitiate any verdict rendered by the jury unless actual injury to the defendant shall be shown. Sefcik was not disqualified or exempt from service. A showing of actual injury is not necessary.

It is the duty of the trial court to see that there is a fair and impartial jury. State v. Verdugo, 78 N.M. 762, 438 P.2d 172 (Ct.App.1968).

"The function of voir dire is to implement the constitutional guarantee of an impartial jury, a fundamental right of our system of criminal justice." [Daniels v. United States, 123 U.S.App.D.C. 127, 357 F.2d 587, 591 (1966)] [Dissenting Opinion].

To this end, the New Mexico legislature has charged trial courts to excuse any juror for good cause. Section 19–1–14, N.M.S.A.1953 (Repl.Vol. 4). In addition the legislature has provided for peremptory challenges to further insure the impartiality of a jury. Section 41–10–3, N.M.S.A.

1953 (Repl.Vol. 6). The right of peremptory challenge is "an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose." Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011 (1892).

"Thus, under statutory law, the court is the judge of actual bias, but counsel is the sole and exclusive judge of whom he shall challenge for suspected bias or prejudice against his client's cause. No one will gainsay that the denial or substantial impairment of the statutory right of peremptory challenge is prejudicial to the constitutional right to a fair and impartial jury." [See 338 F.2d at 786].

There is a well settled rule "which moves the court to act only upon a showing of probable bias of the juror with consequent prejudice to the unsuccessful litigant. Courts act on probabilities, not possibilities, and if the suppressed information is so 'insignifcant or trifling' as to indicate only a remote or speculative influence on the juror, the right of peremptory challenge has not been affected." Photostat Corporation v. Ball, 338 F.2d 783, 786 (10th Cir. 1964).

Sefcik was not excused for cause or peremptory challenge because he remained silent under a duty to speak.

Second, if Sefcik had disclosed during the voir dire his presence in Mrs. C.'s home on October 15, the most probable consequence is that Sefcik would have been excused for cause or by peremptory challenge.

"Whether so intended or not, the effect of the silence of the juror was to deceive and mislead the court and the litigants in respect to his competency. And such deception and misleading has the effect of nullifying the right of peremptory challenge as completely as though the court had wrongfully denied such right." [Consolidated Gas & Equipment

Co. of America v. Carver, 257 F.2d 111, 115 (10th Cir. 1958)].

In Photostat Corporation v. Ball, 338 F. 2d 783, 787 (10th Cir. 1964), the court said:

"In this post-mortem inquiry, we cannot know of course what counsel would have done with the suppressed information. Nor can we take his post-mortem word for it. But we need not presume to speculate on the judgment he would have made. It is enough, we think, to show probable bias of the jurors and prejudice to the unsuccessful litigant if the suppressed information was of sufficient cogency and significance to cause us to believe that counsel was entitled to know of it when he came to exercise his right of peremptory challenge."

It would be blinking reality not to recognize Sefcik's suppression of information being of sufficient cogency and significance to constitute a substantial impairment of Mares' right of peremptory challenge and, therefore, prejudicial to his right to a fair trial by an impartial jury.

In his order overruling the motion for a new trial, the trial judge stated:

"Fully realizing that a close question of law is presented by the facts stipulated by counsel and the testimony given during the hearing on the motion for new trial filed by the defendant, *and that a higher court may properly disagree with my conclusion*, yet I fail to find any factual or legal basis that would lead me to conclude that the Juror Sefcik, * * * was not of a mind to render a verdict other than according to the evidence and the instructions given by the Court, * * *"

The trial court abused his discretion in failing to award Mares a new trial. This case should be accordingly reversed.

I respectfully dissent.