490 P.2d 667

Steven MARES, Petitioner,

v.

STATE of New Mexico, Respondent.

No. 9287.

Supreme Court of New Mexico.

Nov. 11. 1971.

Stanley F. Frost, Tucumcari, for petitioner.

David L. Norvell, Atty. Gen., C. Emery Cuddy, Jr., Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

STEPHENSON, Justice.

Petitioner was tried and convicted of entering a dwelling with intent to commit a felony while armed with a deadly weapon. He appealed and the Court of Appeals affirmed. State v. Mares, 82 N.M. 682, 486 P.2d 618 (Ct.App.No. 561, decided May 28, 1971). We granted certiorari and reverse.

Following commission of the crime and ·on the same day, a juror was present in the dwelling in question with Mrs. C., the complaining witness, while two police officers (who testified at trial) were also present seeking latent fingerprints. Petitioner was convicted on fingerprint evidence. None of these facts came to light until after the verdict, at which time they were the subject of a motion for a new trial.

At the proceedings on petitioner's motion for new trial, Mrs. C. did not recall discussing the crime with the juror. Taking her statement at face value, neither did she deny such a conversation. We find it impossible to visualize a gathering such as the evidence discloses, taking into account the traumatic emotional experience suffered by Mrs. C.; the juror's long standing friendship with her with natural feelings of concern and solicitude; the presence of the police officers (apparently acquainted with the juror) busily engaged in their search for evidence, with no conversation concerning the crime or its facts having occurred. A phlegmatic detachment of such magnitude on the part of each person there present boggles the mind.

█ . It is true that on voir dire the juror admitted his friendship with Mrs. C. However, a want of diligence in failing to challenge is not thereby indicated on the part of petitioner's counsel. In many of our counties, it would be practically impossible to obtain a jury the members of which were all unacquainted with principals in a lawsuit. It is also true the juror said that the acquaintance would not affect his decision, a statement to which the Court of Appeals seems to have attached great weight. We do not regard this statement as conclusive. People v. DeHaven, 321 Mich. 327, 32 N.W.2d 468 (1948); Whitson v. State, 65 Ariz. 395, 181 P.2d 822 (1947); 47 Am.Jur.2d, Jury, § 276.

█ On voir dire, the prospective jurors were asked questions concerning purported knowledge of the facts of the case and the list of witnesses was read out. The only fact disclosed by the juror was that he had been a good friend of Mrs. C. and her late husband for twenty-two years. It seems to us the juror ought to have indicated the involvement we have described, at least to such an extent as would have put counsel on further inquiry. A prospective juror's silence can be the same as a negative answer upon which a party has a right to rely. 47 Am.Jur.2d, Jury, § 208.

█ Petitioner has a right to trial "by an *impartial* jury." U.S.Const. amend. VI, N.M.Const. art. 2, § 14.

An impartial jury is one "where *each and every one* of the twelve members constituting the jury is totally free from any partiality whatsoever." State v. McFall, 67 N.M. 260, 354 P.2d 547 (1960) (emphasis added).

The controlling question here is whether these constitutional rights were accorded to petitioner.

There have been a few cases which have allowed a new trial because of later discovered relationships between the jurors and the parties involved or because of relationships between jurors and persons involved in similar litigation. Thus, in People v. DeHaven, supra, the defendant was convicted of statutory rape of his stepdaughter. After trial it was discovered that two of the jurors had failed to reveal that a common relative had been convicted of a similar crime several years before. The court held that such a relationship was such as to deprive the defendant of an impartial jury.

We are impressed with the court's reasoning in Marvins Credit Inc. v. Steward, 133 A.2d 473 (Mun.Ct.App., D.C., 1957). It involved a contract action. None of the jurors responded when asked as a whole if they had a charge account with the plaintiff corporation or if they had ever been sued on a charge account with it. It was discovered after trial that one juror and her husband not only had an account with the corporation, but that they had been sued on the account and subjected to garnishment proceedings. The court, in reversing and granting a new trial, noted that if the juror had answered truthfully counsel could have "probed her mind as to bias or prejudice" so as to obtain a challenge either for cause or peremptorily. The court then continued:

"While the decisions agree that in all jury trials the parties are entitled to have their matters adjudged by jurors as impartially as is humanly possible, some

cases hold to the view that the burden is on the complaining party to establish prejudice; others that the trial judge has wide discretion in determining whether to set aside a verdict; and that except where clear abuse of discretion is demonstrated, the appellate court should not interfere. Others have decided against the granting of a new trial because the questions asked were not sufficiently important or relevant, or that the juror's involvement in other controversies was too remote in time, or that the questions asked were vague or unclear. In some cases the courts have found that counsel already had knowledge of the facts that would otherwise justify the juror's disqualification and have held that counsel waived his rights.

"We think that the rule to govern such situations may be summarized as follows: Full knowledge of all relevant and material matters that might bear on possible disqualification of a juror is essential to a fair and intelligent exercise of the right of counsel *to challenge either for cause or peremptorily*. It is the duty of a juror to make full and truthful answers to such questions as are asked, *neither falsely stating any fact nor concealing any material matter*. If a juror falsely represents his interest or situation or conceals a material fact relevant to the controversy and such matters, if truthfully answered, might establish prejudice or work a disqualification of the juror, the party misled or deceived thereby, *upon discovering the fact of the juror's incompetency or disqualification after trial*, may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, even though the bias or prejudice is not shown to have caused an unjust verdict, it being sufficient that a party, *through no fault of his own*, has been deprived of his constitutional guarantee of a trial of his case before a fair and impartial jury.

See also Shulinsky v. Boston & M. R. R., 83 N.H. 86, 139 A. 189 (1927).

■ Our system of justice goes to great lengths in seeking compliance with the constitutional mandates regarding impartial juries. Opportunity for extensive voir dire is granted. Elaborate admonitions are given designed to insulate jurors from outside influence. Juries are often segregated, and any unauthorized contact with a juror is presumptively prejudicial to a criminal defendant. State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App.1967). It seems incongruous to permit this verdict to stand, in light of these principles and policies.

We do not attribute conscious fault to any principal in this proceeding. We rather regard it as an unfortunate situation created by an unforeseen or unforeseeable web of coincidences. However, petitioner should not as a result be prejudiced.

■ Our trial courts have broad discretion in granting or denying new trials. State v. Pope, 78 N.M. 282, 430 P.2d 779 (Ct.App.1967). Expansion on this generality would be pointless, since each case must turn upon its own facts, but by nothing we have said do we intend to restrict or modify those powers.

The case is reversed, and the trial court ordered to grant petitioner a new trial.

It is so ordered.

McMANUS and MONTOYA, JJ., concur.

OMAN, Justice (dissenting).

I am unable to agree with the majority opinion. In my judgment, the Court of Appeals properly decided the issues presented on appeal.

Even though I were to agree with the result reached by the majority, in my opinion the nature of the issues presented on appeal are not such as to warrant our review of the decision of the Court of Appeals. Section 16-7-14, N.M.S.A.1953 (Repl.Vol. 4, 1970) grants to this court ap-

pellate jurisdiction to review by certiorari a decision of the Court of Appeals which:

"(1) is in conflict with a decision of the Supreme Court;

"(2) is in conflict with a decision of the court of appeals;

"(3) involves a *significant* question of law under the Constitution of New Mexico or the United States; or

"(4) involves an issue of *substantial* public interest that should be determined by the Supreme Court. [Emphasis added]

It is apparent from a reading of the opinion of the Court of Appeals and the opinion of the majority of this Court that the decision of the Court of Appeals does not fall within the first (1), second (2), or fourth (4) areas of appellate review as provided and granted to this court by § 16–7–14, supra. In fact the contentions made by appellant in his petition for certiorari were (1) that he was " * * * denied * * * a fair trial by impartial jury as required by Article II, Section XIV of the Constitution of the State of New Mexico and Amendment VI of the United States Constitution," and (2) that he " * * * was denied his constitutional right to due process of law" in that " * * * there was not substantial evidence introduced which would support a jury verdict of guilty."

The majority in their opinion have not predicated their reversal of the Court of Appeals and of the trial court upon a lack of "due process of law" or the lack of "substantial evidence" to sustain the conviction, but have expressly stated: "The controlling question here is whether these constitutional rights [to an impartial jury, as provided in the United States Constitution, Amendment VI, and New Mexico Constitution, Art. II, § 14] were accorded to petitioner [defendant]."

Thus, the right of this court to review the decision of the Court of Appeals is dependent upon a resolution of the question as to whether the facts of this case present a *significant* question of law under the constitutional guarantee of "trial by an impartial jury." The majority have resolved this question in the affirmative, while I would resolve it in the negative.

My views are predicated upon the common and clearly defined nature of the constitutional question involved, the unusual and peculiar facts of this case, the unlikeness of any substantial effect of the majority decision upon or the applicability thereof to other cases which may arise under this constitutional guarantee, and my objection to the substitution by the majority of their judgment for the judgment of the trial court. The majority concede a trial court is vested with broad discretion in the matter of granting or denying a defendant's motion for a new trial based upon his claim of denial of trial by an impartial jury.

Without unduly lengthening this dissent by recitation of all the facts bearing upon the question presented, the following pertinent facts clearly appear in the record, and, to a certain extent, are referred to in the opinions of the majority and the Court of Appeals:

(1) We are concerned here with the question of the impartiality of but one juror.

(2) This one juror, a Mr. Sefcik, in response to a question asked of him on voir dire as to whether he knew Mrs. C., answered that he was a good friend of hers and had known her and her husband for twenty-two years.

(3) When asked if he thought this "relationship would affect his opinion," he answered, "No."

(4) When the prospective jurors were asked as a whole if any of them had heard what were purported to be the facts of the case, Mr. Sefcik and most of the others made no response. A lack of response by them clearly indicated that they had not heard what purported to be the facts of the case.

(5) When the prospective jurors were asked as a whole by the trial court to indicate if they were unable to try the case according to their oath or would be unable to base their verdict on the law and the evidence, there was no response. This lack of response clearly indicated that they could and would abide by their oaths as jurors and decide the case according to the evidence adduced before them and the law as given them by the trial court.

(6) As pointed out by the Court of Appeals in its opinion, defendant was in no way limited in his voir dire examination of Mr. Sefcik. Defendant did not challenge him for cause, nor did defendant elect to excuse him by the exercise of one of defendant's remaining peremptory challenges.

(7) The chief of police and the chief of detectives were the two officers who went to the home of Mrs. C. for the purpose of making a subsequent and further investigation of the breaking and entering of her home. When they arrived Mrs. C. and Mr. Sefcik were present in the house. This subsequent investigation consisted of dusting and unsuccessfully attempting to lift fingerprints from an area inside a ulity room which adjoined but was separated from the kitchen by a door. This door was closed when the officers were working in the utility room, and Mrs. C. and Mr. Sefcik were drinking coffee in the kitchen.

(8) The officers, upon their arrival at the home, greeted Mrs. C. and Mr. Sefcik, but in no way discussed the case with them.

(9) Mrs. C. testified she has no recollection of ever discussing the case with Mr. Sefcik. She admits she may at some time have remarked to him that her home had been broken into, but this fact was generally known in the community. Mrs. C. had no idea as to the identity of the person who had broken into her home.

(10) As pointed out by the Court of Appeals, there is nothing to show Juror Sefcik had any knowledge of the case, other than what he learned at the trial, or that his relationship with Mrs. C. was other than what he stated on the voir dire examination of him as a prospective juror.

The trial court in its discretion, after hearing all the voir dire examinations, after hearing all the evidence adduced at the trial and observing the witnesses and the jurors, including Juror Sefcik, and after hearing the evidence adduced by defendant and the State at the hearing on the motion for a new trial, denied the motion. In my opinion, the reversal of the trial court, in view of the evidence and the opportunity of the trial court to observe the witnesses, the jurors and all the proceedings, is to disregard the judgment of the trial court, to strip it of all discretion, and to discredit the voir dire examination of Juror Sefcik and the sworn testimony of the two officers and Mrs. C. produced at the hearing on the motion for a new trial. I am unable to accept the substitution of the doubts and disbeliefs of the majority of this Court for the sworn statements of all the witnesses and the judgment and discretion of the trial court.

The majority describe the factual situation as " * * * an unfortunate situation created by an unforeseen or unforeseeable web of coincidences." They also agree that each case in which is raised the question of the deprivation of a trial by an impartial jury "must turn upon its own facts." I believe these premises lead to the inescapable conclusion that the majority's opinion will be of little value and of no particular significance to anyone but this one particular defendant. A constitutional question, which is neither novel nor unusual and the resolution of which will be of primary concern only in a particular case arising out of an "unforeseen or unforeseeable web of coincidences," is not, in my opinion, a "significant question" of constitutional law.

A quick check of the opinions in Vol. 81 of the New Mexico Reports, which is the latest published volume of the opinions of this Court and the Court of Appeals, shows 65 of those opinions were written by the

Court of Appeals in criminal cases or in post-conviction proceedings arising out of criminal cases. In 37 of these 65 cases one or more claimed constitutional questions were presented on appeal. I feel certain a careful study of the records and briefs on appeal would disclose that a constitutional issue was either directly or indirectly involved in several more of the 65 cases, and, unquestionably, constitutional issues were also involved in some of the civil cases appealed to the Court of Appeals and reported in Vol. 81 of the New Mexico Reports. I do not mean to suggest that my hurried counts of the cases may not be in error, but they are very nearly correct. Nor do I mean to suggest that all the constitutional contentions raised were meritorious. However, constitutional issues are presented in a large number of cases decided by the Court of Appeals.

If we were to take the position that all constitutional questions are *significant*, even though not novel or unusual and not likely to be of concern, except in the case at hand, are we not obliged to review all decisions of the Court of Appeals involving a claimed constitutional question, if the aggrieved party petitions for a writ of certiorari? If not, then on what basis are we going to select those cases in which we grant a writ and conduct a review, if a constitutional question is involved?

If we are going to grant the writ whenever a constitutional question is raised, we can be certain that many more petitions for writs will shortly be reaching us, and we will be compelled to review far more Court of Appeals decisions than we have ever reviewed in the past. In only 8 of the 37 cases above mentioned did the defendant petition this Court for a writ of certiorari, and we granted a writ in none of them.

Since I am of the opinion the Court of Appeals properly denied defendant's claim on appeal that he was not tried to an "impartial jury," and I am further of the opinion that this claim did not present a "significant question of law under the Con-

stitution of New Mexico or the United States," it follows that I feel the writ of certiorari was improvidently granted and the majority opinion is in error. However, the majority disagree with me in both respects. Therefore, I respectfully dissent.

COMPTON, C. J., concurs.