This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO.   29,755**

**PRESTON BLAKE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Offices of Nancy L. Simmons, P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

A jury convicted Preston Blake (Defendant) of aggravated burglary, conspiracy to commit aggravated burglary, possession of stolen property, tampering with evidence, attempting to receive stolen property, and attempting to dispose of stolen property, all based on charges related to a home invasion, injury to the homeowner, burglary, and stolen jewelry. Defendant now appeals, contending that (1) the district court erred in allowing him to represent himself, (2) his motion for a continuance was improperly denied, (3) his speedy trial rights were violated, (4) his counsel was ineffective, and (5) his convictions were not supported by substantial evidence. We affirm.

## I. DISCUSSION

## A. The District Court Did Not Err in Allowing Defendant to Represent Himself

Defendant argues that "his waiver of his right to counsel was neither intelligently [nor] voluntarily made[.]" He also asserts that "even if his waiver was legally acceptable, it was the product of his desire to reserve his right to the *effective* assistance of counsel and was therefore impermissible." Some months prior to trial, Defendant moved to have the district court replace his counsel with a new attorney, alleging conflicts of interest. After a hearing on the issue was held, Defendant's request was denied, and the case proceeded to trial. After his counsel cross-examined

2

the State's first witness, Defendant again requested the district court to appoint a substitute counsel. After the court declined to substitute counsel, Defendant requested to represent himself. After extensive examination of the issue, the district court permitted Defendant to proceed pro se.

We review de novo whether Defendant's decision to waive counsel was made knowingly, intelligently, and voluntarily. *State v. Vincent*, 2005-NMCA-064, ¶ 11, 137 N.M. 462, 112 P.3d 1119. In *State v. Castillo*, we held that "[w]hen a defendant is given a clear choice between waiver of counsel and another course of action, such as retaining present counsel, the choice is voluntary as long as it is not constitutionally offensive." 110 N.M. 54, 55-56, 791 P.2d 808, 809-10 (Ct. App. 1990). In such a situation, "[t]he trial court should make a formal inquiry into a defendant's reasons for dissatisfaction with present counsel when substitution of counsel is requested." *Id.* at 56, 791 P.2d at 810. We first review the district court's decision not to appoint substitute counsel for an abuse of discretion. *State v. Lucero*, 104 N.M. 587, 592, 725 P.2d 266, 271 (Ct. App. 1986). In order to dismiss an appointed counsel, a defendant must make a showing that failure to appoint a substitute counsel will result in ineffective representation or prejudice to the defense. *Id.* at 592, 725 P.2d at 271.

At the first hearing, Defendant complained that his counsel did not prepare for trial and that she did not make all of the motions he had requested. Defendant also

indicated that there was a conflict because his counsel had worked for the district attorney's office in the past. The district court explained to Defendant that his counsel did not have to file motions for everything he requested. The court also determined that Defendant's counsel had not worked for the district attorney's office for a long time and that nothing indicated that her representation of him caused a conflict. The State then attested to Defendant's counsel's trial preparation, which included interviewing witnesses, scheduling additional witness interviews that were to occur before trial, and meeting with the State to examine evidence. The district court thereafter denied Defendant's request for a substitute counsel.

At trial, Defendant renewed his motion and gave additional reasons as to why he wanted to substitute counsel. Defendant explained that his counsel failed to elicit crucial testimony during cross-examination of the State's first witness. Defendant complained that his counsel should have asked the witness about the witness's 911 call, during which she reported that the victim had been robbed by two, not three, men. Defendant explained that this point was crucial to his theory of the case because he claimed that he was never present at the crime. Defendant contended that his counsel did not interview his co-defendants in the case, which was critical to his defense. He also stated that he only spoke to his counsel for fifteen minutes in total during the year preceding his trial and could rarely get through on the phone to her.

4

Defendant complained that his counsel became angry with him when he would not accept a plea bargain. From these factors, Defendant concluded that his counsel did not want to represent him. Before trial, Defendant sent letters to both the disciplinary board and to the public defender's office, complaining of his counsel's inadequacy.

In response to these contentions, Defendant's counsel stated that she met with him for forty-five minutes in jail the week before trial and had met with him at least five times in total at the jail prior to trial. His counsel explained that she had contacted Defendant's co-defendants. Defendant's counsel interviewed one co-defendant extensively, and the information from that interview was provided to him. His counsel was unable to interview the other co-defendant because, through the co-defendant's attorney, the co-defendant maintained that he was never at the scene of the crime. Defendant's counsel explained that she had done extensive work on the case over the last year and pursued every defense available to him in her trial preparation. His counsel asserted that she was prepared to go forward with the trial.

We conclude that, based upon these facts, Defendant failed to meet his burden to show that failure to relieve his counsel and appoint a substitute counsel would have resulted in ineffective representation or prejudice to the defense. We note that an indigent defendant has the right to appointed counsel, but not the right to the appointment of an attorney of his choice. *Lucero*, 104 N.M. at 592, 725 P.2d at 271.

Here, Defendant lost his trust in his counsel. But, "[w]hile loss of trust is certainly a factor in assessing good cause, a defendant seeking substitution of assigned counsel must nevertheless afford the court with legitimate reasons for the lack of confidence." *Castillo*, 110 N.M. at 56, 791 P.2d at 810 (internal quotation marks and citation omitted). All of the arguments Defendant made about his counsel's ineffective performance proved to be baseless. He disliked his counsel's approach to questioning one of the State's witnesses, but "[d]issatisfaction with trial counsel's tactics or strategy is not sufficient grounds for replacement of counsel." *Id.* Furthermore, Defendant's counsel rebutted his contentions regarding her lack of preparation and failure to pursue defenses. Therefore, the district court did not abuse its discretion in refusing to appoint new counsel. Furthermore, because his counsel was effective, we conclude that Defendant's waiver of counsel was not the product of him being forced to choose between ineffective representation by an attorney and self-representation.

Next, we must determine whether the district court took the proper steps to ensure that Defendant's waiver of counsel was made knowingly, intelligently, and voluntarily, as he chose to proceed pro se, having been unsuccessful in securing a new attorney. "The question of whether [the d]efendant's waiver of counsel was knowing and intelligent is contingent on the facts and circumstances of the case," *State v.*

6

*Reyes*, 2005-NMCA-080, ¶ 13, 137 N.M. 727, 114 P.3d 407 (internal quotation marks and citation omitted), as it "turns not only on the state of the record but on the circumstances of the case, including [the] defendant's age and education, previous experience with criminal trials, and representation by counsel before trial." *Castillo*, 110 N.M. at 57, 791 P.2d at 811. In the event a defendant chooses to waive his right to counsel, the district court must

> (1) make [a] showing on the record . . . that a defendant . . . has some sense of the magnitude of the undertaking and the hazards inherent in self-representation; (2) [e]nsure that defendant has been informed of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, possible defenses or mitigating factors that might be available to the defendant; and (3) admonish [the defendant] that [pro se defendants] will be expected to follow the rules of evidence and courtroom procedure.

*State v. Plouse*, 2003-NMCA-048, ¶ 23, 133 N.M. 495, 64 P.3d 522 (alterations in original) (internal quotation marks and citation omitted). Furthermore, the district court should inform the defendant

> (1) that presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules governing the conduct of a trial; (2) that a lawyer has substantial experience and training in trial procedure and that the prosecution will be represented by an experienced attorney; (3) that a person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, may not make effective use of such rights as the voir dire of jurors, and may make tactical decisions that produce unintended consequences; (4) that there may be possible defenses and other rights of which counsel would be aware and if those are not timely asserted, they may be lost permanently; (5) that a defendant proceeding

7

> pro se will not be allowed to complain on appeal about the competency of his representation; and (6) that the effectiveness of his defense may well be diminished by his dual role as attorney and accused.

*Reyes*, 2005-NMCA-080, ¶ 10 (internal quotation marks and citation omitted). We note that "the defendant is not required to have the competency and skill of an attorney to proceed pro se." *State v. Rotibi*, 117 N.M. 108, 110-11, 869 P.2d 296, 298-99 (Ct. App. 1994).

In this case, the district court first examined these requirements as set forth in *Castillo, Rotibi*, and *Reyes*, and then extensively engaged in the required inquiries and determinations. The district court asked Defendant about his age, educational history, and experience with criminal cases. Defendant answered that he was twenty-seven years old, had obtained his GED, and had been in court three or four times in the past on criminal charges, but had never been subject to a criminal trial. The court confirmed with Defendant that he was familiar with the charges against him and the potential penalties and fines for those charges upon conviction. Defendant even recited his charges and potential prison time associated with each offense.

In addition, the district court discussed the pitfalls of self-representation. The court informed Defendant that self-representation is more than just telling your story and presenting a defense. The court twice informed Defendant, and he acknowledged, that he was expected to follow court and evidentiary rules. The court explained that

the effectiveness of his representation could be diminished by Defendant acting as both counsel and the accused. Defendant confirmed that he understood this and admitted to not knowing the rules of law. Defendant stated that he understood his effectiveness could be "diminished greatly" due to his lack of knowledge of the law, but despite this, he thought he could represent himself.

The court confirmed that Defendant understood that the State had two competent, trained attorneys presenting its case and that Defendant was seeking to abandon the assistance of his appointed counsel who was also trained and licensed in New Mexico. The court informed Defendant that "a person unfamiliar with legal procedures may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, may not make effective use of such rights as the voir dire of jurors, and may make tactical decisions that produce unintended consequences[.]" *Reyes*, 2005-NMCA-080, ¶ 10 (internal quotation marks and citation omitted). The court also ascertained Defendant's understanding that he may fail to assert and, therefore, permanently waive possible defenses and rights of which his appointed counsel would be aware. The court also explained to Defendant that he would not have the opportunity to appeal the effectiveness or competency of his representation if he represented himself. After ascertaining that Defendant (1) had experience with the criminal justice system, (2) understood the issues associated with self-

9

representation, (3) understood that he must follow evidentiary and court rules even though he was unfamiliar with them, and (4) understood the charges and penalties he was facing, the district court determined that his waiver of counsel was made knowingly, intelligently, and voluntarily.[1]

We agree with the district court's determination. The district court's admonitions and warnings clearly show that Defendant had a sense of the magnitude of task and hazards inherent in self-representation. Defendant was also thoroughly informed of the charges, and the punishments and fines associated with each crime. Defendant knew he would be expected to follow the rules of evidence and courtroom procedure. Therefore, based upon the facts and circumstances of this case, we hold that Defendant's waiver was made knowingly, intelligently, and voluntarily, and the court did not err in allowing him to proceed pro se.

**B.    Defendant's Motion for a Continuance Was Properly Denied**

After dismissing his counsel in the middle of the trial, Defendant requested more time to prepare his defense. The court denied Defendant's motion for continuance. Defendant argues that "his motion for a continuance should have been granted[, and] the fact that he was denied time to adequately prepare his own defense robbed him of his constitutional rights." The granting or denial of a continuance is

---

[1]The district court then appointed Defendant's trial counsel as standby counsel to remain in the courtroom during the trial.

10

within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant. *State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995). The defendant must show not only that the court abused its discretion, but also that such abuse prejudiced the defendant. *State v. Nieto*, 78 N.M. 155, 157, 429 P.2d 353, 355 (1967). We consider a number of factors set out in *State v. Torres*, in determining whether the district court improperly denied a continuance, including

> the length of the requested delay, the likelihood that a delay would accomplish the movant's objectives, the existence of previous continuances in the same matter, the degree of inconvenience to the parties and the court, the legitimacy of the motives in requesting the delay, the fault of the movant in causing a need for the delay, and the prejudice to the movant in denying the motion.

1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20. "In addition to meeting the *Torres* factors, [the d]efendant must show that the denial of the continuance prejudiced him. No more prejudice need be shown than that the trial court's order may have made a potential avenue of defense unavailable to the defendant." *State v. Salazar*, 2007-NMSC-004, ¶ 16, 141 N.M. 148, 152 P.3d 135 (internal quotation marks and citation omitted). When a defendant "elects to assert his right of self-representation[,] . . . he may not use his right to self-representation to cause delay or thwart the orderly and fair administration of justice." *State v. Lewis*, 104 N.M. 218, 221, 719 P.2d 445, 448 (Ct. App. 1986).

11

On the second day of trial, after Defendant began his self-representation and the State presented the testimony of two witnesses, Defendant requested the district court to give him more time to "research his case," stating that he did not have access to law books at the jail and did not know the law. Defendant also complained that he did not receive discovery. The court indicated to Defendant that he had received the paperwork he needed to try the case. Defendant asserted that he only had police reports, and he had not seen videos of police testimony. The State responded, explaining that videos of police testimony did not exist. The State explained that "[D]efendant has been afforded full discovery . . . through counsel. Counsel's been given the opportunity to look at the pictures. I'm also [having D]efendant view every photo and every exhibit before it's admitted. I showed him the other items and explained them to him before they were admitted."

We conclude that Defendant's continuance was properly denied. Defendant moved for this continuance in the middle of the trial after the jury had been empaneled, Defendant fired his attorney, and the State had questioned two witnesses, who were also cross-examined by Defendant. Under such circumstances, granting the continuance would cause substantial inconvenience to the court, the State, the witnesses, and the jury. Defendant even admits that his continuance inconveniences both the State and its witnesses. Although Defendant acknowledges his responsibility

for the delay because he chose to represent himself in the middle of the trial, he argues that his fault was minimized by the fact that he had notified the district attorney and the court of his belief that his counsel was inadequate six months prior to the trial date. Since we held above that his counsel was not ineffective and that the district court did not err in failing to substitute another attorney, we reason that Defendant did not minimize his fault by alerting the district court that he disliked his attorney six months before trial.

If Defendant was unhappy with his counsel, he had the opportunity well before trial to dismiss his counsel and begin self-representation or hire new counsel. Yet, Defendant chose to wait until trial commenced before he dismissed counsel. The district court cannot force Defendant to represent himself just because he is unhappy with an effective attorney. Therefore, the fault for causing the delay is solely attributable to Defendant.

Furthermore, even if Defendant had a legitimate motive to research his case and the rules of court and evidence, it would be unlikely that he could learn evidentiary and court rules in a reasonable amount of time in order to apply that knowledge when representing himself after his trial had already commenced. As Defendant admits, no specific length of continuance was requested. The court would have to postpone the trial for an inordinate amount of time with no promise that any amount of time given

would improve Defendant's understanding of the rules of evidence and the rules of court. As we noted above, "the defendant is not required to have the competency and skill of an attorney to proceed pro se." *Rotibi*, 117 N.M. at 110-11, 869 P.2d at 298-99. It appears that Defendant was provided full discovery, and the State went out of its way to show and explain the evidence as it presented exhibits at trial. Thus, a continuance would be unlikely to accomplish Defendant's objectives.

Defendant argues that he suffered "self-evident" prejudice by the denial of the continuance because "[h]e had not personally seen the majority of the State's exhibits prior to trial; he had no opportunity to familiarize himself with the rules of evidence; [and] he had no chance to prepare his own witness list, or interview the witnesses for the State." Yet, Defendant fails to explain how any of these things would have changed the outcome of his trial. He does not contend that if he had the opportunity to do these things, he would have been able to present some other defense at trial. Therefore, Defendant fails to show how he was prejudiced by the denial of his motion.

We conclude that the *Torres* factors do not weigh in Defendant's favor. The district court did not err in denying Defendant's motion for a continuance.

## C.   Defendant's Speedy Trial Rights Were Not Violated

Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant contends that his right to a speedy trial was violated. "[T]he initial inquiry in speedy trial analysis is a determination as to whether the length of pretrial delay is presumptively prejudicial. [A] presumptively prejudicial length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors." *State v. Montoya*, 2011-NMCA-074, ¶ 10, 150 N.M. 415, 259 P.3d 820 (second alteration in original) (internal quotation marks and citation omitted). If the delay is presumptively prejudicial, we balance four factors to determine whether a speedy trial violation has occurred. The factors to be considered are "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *Plouse*, 2003-NMCA-048, ¶ 34. "In considering each of these factors, we defer to the [district] court's factual findings[,] but review de novo the question of whether [the d]efendant's constitutional right [to a speedy trial] was violated." *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113.

In this case, the pretrial delay was just under twelve months from Defendant's arraignment on May 16, 2008, to the completion of his trial on May 15, 2009. *See State v. Haar*, 110 N.M. 517, 522, 797 P.2d 306, 311 (Ct. App. 1990) ("The length of

15

delay is measured from the time of either charge or arrest."); *see also* Rule 6-506(B)(1) NMRA (stating that, in magistrate court, the defendant's criminal trial must commence within one hundred eighty-two days of the latest of several events, including arraignment).[2] In *State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387, our Supreme Court held that twelve months is presumptively prejudicial for simple cases, fifteen months is presumptively prejudicial for intermediate cases, and eighteen months is presumptively prejudicial for complex cases. Thus, even if we were to consider this a simple case, the delay here of less than twelve months was not presumptively prejudicial. We conclude that further inquiry into the *Barker* factors is not required and that Defendant's speedy trial rights were not violated.

**D.    Defendant's Counsel Was Not Ineffective During Voir Dire**

Defendant contends that his trial counsel was ineffective for failing to alert the district court to potential juror bias in violation of Defendant's right to an impartial jury. For Defendant to establish a prima facie case of ineffective assistance of counsel, he must show that (1) his counsel's performance fell below that of a reasonably competent attorney, and (2) he was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729.

---

[2]We note that Defendant's case was originally filed in magistrate court and then bound over to the district court.

16

In the absence of proof that defense counsel's performance was not reasonably competent, and the defense was prejudiced as a result, we presume counsel to be effective. *See State v. Trujillo*, 2002-NMSC-005, ¶ 38, 131 N.M. 709, 42 P.3d 814 ("Assistance of counsel is presumed effective unless the defendant demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." (internal quotation marks and citation omitted)); *State v. Jacobs*, 2000-NMSC-026, ¶ 48, 129 N.M. 448, 10 P.3d 127 (providing that counsel is presumed competent).

Defendant contends that his right to an impartial jury was violated by a juror's comment during voir dire and that his counsel should have alerted the district court to juror bias that may have resulted from the comment. *See State v. Gallegos*, 88 N.M. 487, 489, 542 P.2d 832, 834 (Ct. App. 1975) ("Article II, § 14 of the Constitution of New Mexico guarantees defendants an impartial jury, which means a jury where each and every one of the twelve members constituting the jury is totally free from any partiality whatsoever." (internal quotation marks and citation omitted)). At the beginning of voir dire, the district court apprised the jury panel of the charges and people involved in the case. When the district court asked whether any of the jurors knew anything about the case, some jurors indicated they did, and the court questioned them about the sources of their knowledge of the case. One of the jurors

17

was the grandfather of Defendant's co-defendant in this case. The juror responded to the court's question about the source of his information by stating, "My grandson was involved with him." The district court responded, "And we need to talk with you in chambers as well." The court continued questioning the other jurors. Before trial commenced, the court excluded the juror at issue in this appeal.

Defendant argues that when the "juror, the relative of a co-defendant, . . . unabashedly associate[d] Defendant with his guilty grandson in front of the entire jury panel[, he] completely taint[ed] the entire jury selection process. The scenario is akin [to] granting each and every juror certain foreknowledge of the alleged facts of the case[.]" Defendant contends that "[a]ny reasonably competent attorney would recognize the inherent bias issues created by the grandfather's statements[] and would have raised this issue at the [d]istrict [c]ourt level." To support this argument, Defendant compares this case to *Mares v. State* where the Supreme Court, due to juror impartiality, reversed the defendant's conviction for entering a dwelling with intent to commit a felony while armed with a deadly weapon. 83 N.M. 225, 490 P.2d 667 (1971). After the jury rendered its verdict, it came to light that "a juror was present in the dwelling in question with . . . the complaining witness, while two police officers (who testified at trial) were also present seeking latent fingerprints. Petitioner was convicted on fingerprint evidence." *Id*. at 225, 490 P.2d 667. We conclude that

18

*Mares* is not analogous to the case before us, as it deals with pre-existing and concealed juror bias discovered after the fact.

The issue is the effect, if any, the comment had on the other jurors. In this regard, we find *State v. Gardner*, 2003-NMCA-107, 134 N.M. 294, 76 P.3d 47, and *State v. Price*, 104 N.M. 703, 726 P.2d 857 (Ct. App. 1986), *modified on other grounds by State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991), to be on point in this case. In *Gardner*, a juror allegedly made a biased statement during voir dire. 2003-NMCA-107, ¶ 4. A person reported that, while in the hallway, the juror stated to three other potential jurors that "[the defendant]'s guilty, oh, but not really," while making a motion like cutting her throat. *Id.* ¶ 5 (internal quotation marks omitted). When questioned about the incident, the juror denied saying anything in the hallway, but admitted to "making a 'teasing' comment in the courtroom along the lines of 'I should just tell them just to hang him high'" in front of the other jurors. *Id.* ¶ 6. The district court excused the juror, but refused to grant a mistrial because there was no evidence that the comments prejudiced the remaining jurors. *Id.* ¶ 9. This Court held that "[a]ssuming, as [the d]efendant argue[d], that the comments by [the j]uror . . . reflected bias on her part, her personal bias did not infect deliberations because the trial court excused her from service and replaced her with an alternate, which is the appropriate remedy when a juror exhibits apparent bias." *Id.* ¶ 12. We also noted

19

that, if the other jurors heard the comment, "it occurred prior to the jury's oath to arrive at a verdict according to the evidence and the law contained in the instructions of the court, and prior to the presentation of evidence." *Id.* We analyzed that, "to find actual bias among the jurors, we must [therefore] further speculate that a juror who overheard a comment . . . disregarded the trial court's instructions. Only this attenuated and unproven chain of events could have resulted in the bias alleged by [the d]efendant." *Id.* This Court concluded that the comments did not require a mistrial. *Id.*

Similarly, in *Price*, a juror made an improper comment during the middle of the defendant's trial for attempted murder and armed robbery. 104 N.M. 703, 726 P.2d 857. Following the prosecutor's cross-examination of the defendant, "a juror interrupted the proceeding and stated: 'Your honor, if the court will permit me, there is a gun and shells within reach of this individual. Is that safe?'" *Id.* at 707, 726 P.2d at 861. The defendant argued that this statement indicated that the juror had already reached the conclusion that the defendant was guilty before the close of evidence and that the statement may have prejudiced other jurors. *Id.* This Court concluded that, "[a]lthough it was improper for the juror to express, in open court, his assessment that [the] defendant might be dangerous, the comment is not indicative of bias or prejudice to the extent necessary to require a mistrial." *Id.* at 708, 726 P.2d at 862. We also

determined that, "[e]ven though the other jurors heard the comment, there is no indication that such a comment served to prejudice the other jurors." *Id.*

Applying the same reasoning to the facts of this case, we conclude that the statement from the juror that his "grandson was involved with [Defendant]" did not taint the jury selection process. Unlike the juror statements in *Gardner* and *Price*, the statement in this case was not facially prejudicial. It conveyed no judgment of guilt by the juror about Defendant. The statement simply described to the district court how the juror knew of Defendant's case prior to trial. The statement did not provide foreknowledge of the alleged facts of the case, as it was unclear from the statement itself how the juror's grandson was involved with Defendant. Moreover, the statement was heard before the jury's oath to arrive at a verdict, according to the evidence and the law contained in the instructions of the court and before the presentation of evidence. To assume the jury was prejudiced by this comment would require us to assume that a member of the jury disregarded their oath and the evidence presented at trial. There is no evidence that Defendant objected further or demonstrated the comment's effect on any member of the jury panel. As the juror in question was excused before trial commenced, the statement was not prejudicial, and there is no evidence of prejudice presented by Defendant, we conclude that the statement could not have prejudiced the jury.

Therefore, Defendant's counsel did not perform below the level of a reasonably competent attorney during voir dire. And, Defendant was clearly not prejudiced by her performance with regard to this issue. As Defendant bases his ineffective assistance of counsel claim solely on this issue, we cannot conclude that his counsel was ineffective.

E.      Defendant's Convictions Were Supported by Substantial Evidence

Defendant argues that "the State's evidence was insufficient, as a matter of law, to sustain his convictions." In particular, Defendant contends that several issues cast a reasonable doubt on his involvement in the charged crimes: (1) no physical evidence proves that Defendant actually entered the victim's house, (2) there was conflicting testimony about whether there were two or three men in the victim's house during the burglary, and (3) there was conflicting testimony about events that occurred during the burglary. Defendant also argues that no evidence supports the intent elements for tampering with evidence and the three counts pertaining to receiving stolen property, as he did not know the property was stolen. As we review the case for sufficient evidence to support the verdict, we analyze

> whether a rational fact-finder could determine beyond a reasonable doubt the essential facts necessary to convict the accused. When determining the sufficiency of the evidence, the court views the evidence in a light most favorable to the verdict, considering that the [s]tate has the burden of proof beyond a reasonable doubt.

*State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72. We will not reweigh the evidence or substitute our judgment for that of the jury. *State v. Graham*, 2005-NMSC-004, ¶ 7, 137 N.M. 197, 109 P.3d 285. "[S]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (alteration in original) (internal quotation marks and citation omitted).

To the extent that Defendant contends there is insufficient evidence proving that he actually entered the victim's house, eye witness testimony from a co-defendant places Defendant in the victim's house. Co-defendant, J.B. Stewart, who pled to charges related to the burglary, testified that he drove Defendant and another co-defendant, Joe Zurtuche, to the victim's house where they intended to commit a burglary. Stewart stated that he watched Defendant and Zurtuche enter the victim's house. Stewart also stated that, after waiting a short while, he also entered the victim's house. Furthermore, the victim corroborates Stewart's testimony, as she testified to observing three men in her home during the burglary. The victim stated that because it was dark and the burglars shined bright lights in her face, she could not make out their faces. Nonetheless, she testified that Defendant's voice sounded familiar from the burglary.

In addition, Defendant contends that conflicting testimony about whether there were two or three men in the victim's house during the burglary, and conflicting testimony about the events that occurred during the burglary, establish insufficiency of evidence. Defendant refers to the 911 call placed by the victim's neighbor, in which she stated that two men attacked and robbed the victim. Even if this witness stated that there were two men in the house, sufficient evidence elaborated upon above establishes that Defendant was in the house and involved in the burglary. Defendant also argues that there is insufficient evidence because the testimony of Stewart and the victim were inconsistent. At trial, Stewart testified that he "consoled [the victim] by telling her that he was not going to hurt her" and that she did not mention this encounter during her testimony. Yet, this does not demonstrate insufficient evidence to show that Defendant committed the crime. As stated above, eye witness testimony places Defendant in the victim's house during the burglary. The victim's testimony describes the events establishing the burglary that occurred after Defendant entered her house. We remind Defendant that, in reviewing for sufficient evidence, we view the evidence in the light most favorable to the verdict. "A reviewing court may neither reweigh the evidence nor substitute its judgment for that of the jury." *Graham*, 2005-NMSC-004, ¶ 7 (internal quotation marks and citation omitted). Thus, these inconsistencies do not amount to an insufficiency of evidence.

Defendant argues that no evidence supports the intent elements for tampering with evidence and the three counts pertaining to receiving stolen property. Defendant asserts that he did not know and that evidence fails to establish his knowledge that the property was stolen or that it was evidence in a crime. Yet, substantial evidence supports an inference of Defendant's knowledge that the property was stolen. "[A] permissible inference must reasonably be based upon facts established in evidence and not upon mere conjecture or other inferences." *State v. Bejar*, 101 N.M. 190, 192, 679 P.2d 1288, 1290 (Ct. App. 1984) (alteration in original) (internal quotation marks and citation omitted). "Proof of knowledge is sufficient if the evidence discloses some conduct from which the fact finder may fairly infer [the] defendant's knowledge." *State v. Martinez*, 104 N.M. 584, 586, 725 P.2d 263, 265 (Ct. App. 1986).

Testimony places Defendant in the victim's house and attacking and robbing her. Thereafter, eye witness testimony describes Defendant attempting to sell loose diamonds extracted from the victim's jewelry settings to a jewelry store and pawn shop. In Defendant's house, the police found the victim's diamonds, the matching diamond settings, other jewelry owned by her, and the bag in which she stored her jewelry, all of which were taken from the victim's house on the night of the burglary. Because evidence indicates that Defendant participated in the burglary, the jury could fairly infer his knowledge that the items were stolen.

After careful review of the record, we conclude that sufficient evidence supports Defendant's convictions.

**II.      CONCLUSION**

For the reasons stated above, we affirm Defendant's convictions.

**IT IS SO ORDERED.**


_____

**RODERICK T. KENNEDY, Judge**


**WE CONCUR:**


_____

**CELIA FOY CASTILLO, Chief Judge**


_____

**TIMOTHY L. GARCIA, Judge**