354 P.2d 547

STATE of New Mexico, Plaintiff-Appellee,

v.

Charles C. McFALL, Defendant-Appellant.

No. 6649.

Supreme Court of New Mexico.

Aug. 4, 1960.

Wright & Kastler, Raton, for appellant.

Hilton A. Dickson, Jr., Atty. Gen., Thomas O. Olson, First Ass't Atty. Gen., Boston E. Witt, Ass't Atty. Gen., for appellee.

MOISE, Justice.

The appellant was charged with killing and murdering one Charles Frank Shockley.

The facts are briefly these. October 25, 1958, being the first day of the pheasant season, the deceased and one Bobby Harmon left their homes in Raton about 6:00 a. m. and proceeded south to what is known as the French tracts for the purpose of hunting pheasants. About two hours later they drove off of a dead end road onto a piece of property and walked a distance along an abandoned road looking for pheas-

ant and then turned around to return to their car when appellant drove up in a pickup and stopped by their car. He got out of his car and approached them. He pulled a knife with a long blade from a scabbard and as he got near said "Can't you damn guys read?" and appeared to be mad. Both Harmon and Shockley had shotguns in their hands. As appellant got near him with the knife in his hand, Shockley threw his gun up, appellant grabbed the gun and they grappled for it. Harmon, being concerned about what could happen with the gun, started away toward his car looking back occasionally, and just as he reached his car he heard a shot. He looked around and saw Shockley slump to the ground, and appellant was standing with Shockley's gun in his hands. Harmon got behind his car and when appellant put the gun down, came out and went for the police and an ambulance. Shockley was dead from the gunshot wound on arrival at the hospital. No knife was ever located, and Harmon did not know what happened to the knife while the grappling over the gun was going on. It appeared that there were some homemade "No Hunting" signs along the road adjacent to the property where the shooting took place, but Harmon denied having seen them before the shooting. Harmon was the only witness to the shooting, except appellant and he did not take the stand.

At the trial the charge of first degree murder was dismissed by the court and the question of appellant's guilt or innocence of second degree murder, voluntary and involuntary manslaughter were submitted to the jury. Upon conviction of involuntary manslaughter, this appeal is prosecuted.

Appellant's first point is to the effect that he was deprived of a trial by a fair and impartial jury because after he had exhausted the last of his peremptory challenges, one Mrs. Phillip A. Sipe was called into the jury box, and though challenged for cause by appellant, he was overruled, and Mrs. Sipe sat as a juror. The basis for the asserted disqualification of Mrs. Sipe as a juror was the fact that she was the wife of a special officer of the Santa Fe Railroad, who held a commission as a special deputy sheriff, issued by the sheriff, and although her husband drew no pay by virtue of the fact he held the commission, since it was important to him and a convenience to to his job, there would be a certain feeling of duty or obligation toward the sheriff who was endorsed as a witness for the prosecution on the information.

Mrs. Sipe, on voir dire, stated she knew nothing about the facts of the case, that the fact her husband held a deputy's commission would not influence her, knew none of the parties involved, had no knowledge of any reason why she could not serve fairly and impartially, and if chosen would be governed solely by the law and evidence in the case.

Article II, § 12, of the New Mexico Constitution, guarantees a trial by jury and Article II, § 14, provides, among other things, that the trial shall be by an "impartial" jury. By impartial jury is meant a jury where each and every one of the twelve members constituting the jury is totally free from any partiality whatsoever. Coughlin v. People, 144 Ill. 140, 33 N.E. 1, 19 L.R.A. 57; Stevens v. State, 94 Okl.Cr. 216, 232 P.2d 949. "Impartial" is defined in Webster's New International Dictionary (2nd Ed.), as "not partial; not favoring one more than another; treating all alike; unbiased; equitable; fair; just." Accordingly, the jury which one charged with crime is guaranteed, is one that does not favor one side more than another, treats all alike, is unbiased, equitable, fair and just. If any juror does not have these qualities, the jury upon which he serves is thereby deprived of its quality of impartiality. It follows that if Mrs. Sipe could not sit impartially, because of the facts related, the ruling of the court denying the challenge for cause would constitute reversible error. State v. Sims, 51 N.M. 467, 188 P.2d 177; State v. Brooks, 57 Mont. 480, 188 P. 942.

However, as was stated in State v. Burrus, 38 N.M. 462, 35 P.2d 285, and repeated in State v. Sims, supra, the trial court must exercise its discretion in ruling upon challenges to prospective jurors when the jury is being impanelled, and its decision in this regard will not be disturbed unless the error is manifest, or there is a clear abuse of discretion. The rule is the same in passing upon bias or prejudice as in determining questions of prospective jurors' intelligence and understanding as in State v. Anderson, 24 N.M. 360, 174 P. 215. See also State v. Costales, 37 N.M. 115, 19 P. 2d 189.

In this instant case we are satisfied the court did not abuse its discretion in overruling appellant's challenge of Mrs. Sipe. We have not had our attention called to any case in this or any other jurisdiction which would hold her disqualified. The closest case on its facts is Tate v. People, 125 Colo. 527, 247 P.2d 665, 671, relied on heavily by appellant. However, it is clear from a reading of the opinion in that case that the decision there turned on the fact that the juror whose qualifications were being questioned was a special deputy sheriff, who drew no pay from the county "other than for special services performed at the request of the sheriff." The court, in holding there was error in failing to excuse him, stated:

"In this case the juror, as a deputy sheriff, would be presumed to be under ordinary allegiance to his superior, the sheriff, who was the prosecuting witness in the case, and his remuneration as deputy sheriff was wholly dependent upon such services as he might perform at the request of his superior."

The differences between the situation there and here are patent. There is no question of allegiance between the sheriff and Mr. Sipe. He was an employee of the railroad and his allegiance was to his employer. The sheriff here was not the prosecuting witness, nor for that matter was he a necessary or material witness. Although he took the sand, his testimony was not material in the case. There was no question of any control over remuneration present here, as Mr. Sipe received no remuneration from the county. Also, it should be pointed out that we are still another step removed—we are not considering the qualifications of the deputy, but those of his wife, and without deciding whether or not Mr. Sipe would have been qualified, we are clear it was no abuse of discretion to overrule a challenge of Mrs. Sipe, under the facts and circumstances here present. Nothing has been shown which would indicate she could not be impartial, or that the court did not act properly in permitting her to sit.

Appellant next asserts that the question of whether or not he was guilty of involuntary manslaughter was a false issue and should not have been submitted to the jury.

His argument proceeds as follows. Under the undisputed testimony, appellant "commenced a surprise, unprovoked assault on the deceased with a deadly weapon and accordingly must be held responsible for the consequences of the unlawful assault." Citing State v. Griego, 61 N.M. 42, 294 P.2d 282. He then points out that under these facts appellant could have been found guilty of murder in the second degree, or of voluntary manslaughter, of which offenses he had been acquitted, but there could not have been any issue of involuntary manslaughter present.

We are of the opinion that appellant's position is not well taken on at least two grounds. First, we are not convinced that under the evidence appellant could not have been guilty of involuntary manslaughter, which in § 40–24–7, N.M.S.A., 1953, is defined as:

"* * * the unlawful killing of a human being without malice. * * * In the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection."

Secondly, although appellant would argue that § 41–13–1, N.M.S.A., 1953, does not apply in the instant case, we are of the opinion that it does. The section reads as follows:

"Upon indictment or information for an offense consisting of different degrees, the jury may find the accused not guilty of the offense charged in the indictment or information and may find him guilty of any degree of such offense inferior to that charged in the

indictment or information, or of an attempt to commit such offense or any degree thereof; and any person found guilty of murder in the second degree or of any degree of manslaughter shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide; and no judgment shall be stayed, arrested or in any manner affected because the evidence shows or tends to show the accused guilty of a higher degree of the offense than that of which he is convicted."

He would avoid the provisions of this act by arguing that we have no degrees of manslaughter in New Mexico. § 40–24–7, supra, although denominating manslaughter as voluntary and involuntary, carries the same penalty of one to ten years in the penitentiary, when guilty of either. He then states that even if § 41–13–1, supra, applies to voluntary manslaughter, as held in State v. Inman, 41 N.M. 424, 70 P.2d 152, and State v. Griego, supra, it has never been held to apply where the conviction was of involuntary manslaughter. In this argument we are unable to follow appellant's reasoning. If, as he argues, there are no degrees of manslaughter, and since the statute by its clear language provides that if a person is found guilty of:

"* * * any degree of manslaughter [he] shall be punished according

to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide; * * *."

it seems to us that nothing could be clearer than the requirement that even though appellant may have only been guilty of a higher degree of homicide, upon conviction of manslaughter he shall be punished for the same, and it makes no difference if it be voluntary or involuntary manslaughter.

This court held as long ago as State v. Burrus, supra, decided in 1934, that manslaughter is one of the four kinds of homicide, and that it is included within a charge of murder. It was not stated there if voluntary only or involuntary manslaughter was referred to, but our statute, § 40–24–7, supra, defining manslaughter, has remained unchanged since 1907, and it is reasonable to assume that both were included in the broad term "manslaughter." We see no escape from the conclusion that since the adoption of § 41–13–1, supra, conviction of involuntary manslaughter will not be set aside under an information charging murder and manslaughter, even though the proof would only support conviction of a higher degree of homicide. As already stated, we do not decide, because it is not necessary to do so, that this is the situation here, and that involuntary manslaughter was not within the proof.

■ Appellant's third and last point is to the effect that the New Mexico statutes do not declare involuntary manslaughter to be an offense, stating that § 40–24–7, supra, merely defines the term and § 40–24–10, N.M.S.A., 1953, provides the penalty. As we understand his argument, it is to the effect that since the statute does not specifically contain words to the effect that the acts defined "shall be deemed unlawful" or "shall hereafter be unlawful" or similar words, the statute is defective and the acts defined are not crimes.

With this argument we cannot agree. True, there are no words of prohibition in § 40–24–7, supra, beyond use of the term "unlawful" therein, but by § 40–24–10, supra, conviction of the acts defined in § 40–24–7 are made punishable by imprisonment. This is all that is required. In State v. Thompson, 57 N.M. 459, 260 P.2d 370, 374, we said:

"By the constitution of the state the legislature is invested with plenary legislative power, and the defining of crime and prescribing punishment therefor are legislative functions."

Later in the same case we said:

"Our duty is to ascertain and declare the intention of the legislature, and to give effect to the legislative will as expressed in the laws. Asplund v. Alarid, 29 N.M. 129, 219 P. 786;

In re Santillanes, 47 N.M. 140, 138 P. 2d 503. Every legislative act comes before this court surrounded with the presumption of constitutionality, and this presumption continues until the act under review clearly appears to contravene some provision of the Constitution. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407; State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P.2d 255. The Courts are by the constitution not made critics of the legislature, but rather guardians of the Constitution; and though the courts might have a doubt as to the constitutionality of the legislative act, all such doubts must be resolved in favor of the law. State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511. The crime and punishment can be separated and distinguished by the legislature. One statute may create an offense, and another provide for its punishment. Palmer v. Lenovitz, 35 App.D.C. 303; People v. Tokoly, 313 Ill. 177, 144 N.E. 808; 22 C.J.S. Criminal Law § 25, page 77."

See also 1 Wharton's Criminal Law and Procedure, page 25, § 16.

There can be no possible question that manslaughter is a crime under the laws of the State of New Mexico, punishable by

imprisonment, and has been for many years past. This point of appellant is without merit.

The judgment appealed from will be affirmed. It is so ordered.

COMPTON, C. J., and CARMODY and CHAVEZ, JJ., concur.

NOBLE, J., not participating.