637 P.2d 572

STATE of New Mexico,
Plaintiff-Appellee,

v.

Dale Eugene EDWARDS,
Defendant-Appellant.

No. 4881.

Court of Appeals of New Mexico.

Oct. 20, 1981.

Rehearing Denied Nov. 2, 1981.

Certiorari Denied Dec. 3, 1981.

Paul Kennedy, Kennedy & Steinmetz, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Heidi Topp Brooks, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

HENDLEY, Judge.

Convicted of involuntary manslaughter contrary to § 30–2–3(B), N.M.S.A.1978, defendant appeals, contending the trial court erred in 1) not dismissing the indictment; 2) not suppressing certain oral statements; 3) not permitting full cross-examination of a witness; and 4) submitting an instruction on involuntary manslaughter. Issues listed in the docketing statement and not briefed are deemed abandoned.

*The Indictment*

Defendant was originally indicted on an open charge of murder. That indictment did not include language that he had used a firearm. Defendant moved to have the firearm enhancement excluded since it was not mentioned in the indictment. The trial court held it was premature to rule on the motion, but indicated that his general reaction was that the firearm enhancement interrogatory would not be submitted.

Subsequently, the State filed to *nolle prosequi* the indictment and obtained a second indictment charging defendant with second degree murder with the use of a firearm. Defendant's motion to quash the

second indictment on the grounds that a previously valid indictment had already been returned was denied.

Defendant contends that under § 31–6–9(A), N.M.S.A.1978, the second grand jury did not have jurisdiction to indict defendant in Cause No. 32823 because a prior valid indictment based upon the same facts had already been returned by a prior grand jury in Cause No. 32561.

Section 31–6–9, *supra*, states:

*Charge to grand jury.*

The district judge convening a grand jury shall charge them with their duties and direct them as to any special inquiry into violations of law that he wishes them to make. The grand jury need not make special inquiry into the general existence or occurrence of violations of any particular statute, notwithstanding any other provision of law. The grand jury is obliged, and the district judge shall charge that they are, to inquire into:

A. any public offense against the state committed and triable in the county which is not barred from prosecution by statute of limitations *and upon which no valid indictment or information has theretofore been filed* ;

B. the condition of every person imprisoned in the county not lawfully committed by a court and not indicted or informed against; and

C. the condition and management of every public jail or prison within the county.

(Emphasis added.)

A *nolle prosequi* does not amount to an acquittal. When a *nolle prosequi* has been filed, the accused may be reindicted or reinformed against. *State v. Rhodes*, 77 N.M. 536, 425 P.2d 47 (1967). *See, State v. Saiz*, 92 N.M. 776, 595 P.2d 414 (Ct.App. 1979). The district attorney may file a *nolle prosequi* upon good cause and honest motives, but it may not be used to circumvent the rules. *State v. Ericksen*, 94 N.M. 128, 607 P.2d 666 (Ct.App.1980).

We find nothing in the record which indicates the prosecutor was acting in bad faith. In fact, the record indicates the contrary.

During the hearing on defendant's motion to exclude consideration of the firearm enhancement, the prosecutor indicated that he believed that the grand jury had intended to include the firearm enhancement. It was assumed that the absence of reference to the firearm enhancement in the text was a technical error. Defendant never refuted that contention. Defendant, whose defense was self-defense, never contended that a firearm was not used in the homicide.

A plain, literal reading of § 31–6–9(A), *supra*, suggests that the Legislature did not intend to prohibit a district attorney from reindicting a suspect when there is a flaw in the original indictment. Defendant's motion was properly denied.

*Oral Statement*

Defendant was being escorted by two police officers, Johnson and Baragiola, from the police department to the county detention center across the street. As they crossed the street, a third police officer, Guerra, pulled up in his patrol car and asked Johnson, "Is he the one?" The defendant then stated, "I didn't shoot anybody but five or six times and if that wasn't enough I would have shot him five or six more." This was followed by a short laugh. All three officers testified that the question was directed to Officer Johnson and that no one asked the defendant any questions. At the time Officer Guerra asked the question of Officer Johnson, the defendant was walking away and had his back toward Guerra.

Defendant contends that the trial court erred in failing to suppress his oral statement made in the presence of police officers while being accompanied to the county detention center. Defendant's position is that the statement should be suppressed because it was taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The *Miranda, supra,* safeguards come into play whenever a person in custo-

dy is subjected to either express questioning or its functional equivalent. *State v. Harge*, 94 N.M. 11, 606 P.2d 1105 (Ct.App. 1979). An "interrogation" is a threshold requirement when a defendant alleges a violation of his *Miranda, supra,* rights. *State v. Harge, supra; Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1979).

Defendant contends this is a more compelling case than in *Innis, supra.* We disagree. In *Innis, supra,* the issue was whether defendant's incriminating statements resulted from an interrogation. There, defendant was arrested shortly after committing an armed robbery. At the time of his arrest, the sawed-off shotgun used to perpetrate the crime was not in his possession. Defendant was given his *Miranda, supra,* rights. The defendant indicated that he understood those rights and wanted to speak with a lawyer. Defendant was then placed in a patrol car with three police officers and driven to the central police station. During the ride to the police station, two of the officers engaged in a conversation concerning the missing shotgun. The gist of the conversation was that there was a school for handicapped children nearby and, because the area was frequented by handicapped children, the officers should continue to search for the weapon. The officer who initiated the conversation indicated his fear that a child could be hurt. The defendant then interrupted the conversation and directed the officers to where the gun was located. Prior to trial, defendant moved to suppress the shotgun and his statements regarding the shotgun. The trial court admitted the evidence at trial and the Rhode Island Supreme Court reversed.

In concluding that defendant had not been subjected to an interrogation, the United States Supreme Court in *Innis, supra,* established the following test for determining if an interrogation has occurred.

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation"

under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response. (Footnotes omitted.)

■ In the instant case, it cannot be said that the trial court erred in refusing to suppress defendant's statements. There is no evidence that the officer knew or should have known that his simple statement, "Is he the one?" would have resulted in defendant making an incriminating statement. There is no evidence that the patrolman who asked the question knew that defendant was intoxicated or that he had any familiarity with defendant. Furthermore, there is no basis for concluding that defendant perceived that he was being "interrogated".

The denial of defendant's motion to suppress was proper.

*Cross-Examination*

Defendant contends that he was denied his right to confront a witness and was thereby denied his right to a fair trial because the trial court refused to permit a full and fair cross-examination of the State's witness, Dan Panebeouf. Panebeouf, the

victim's parole officer, testified that the victim had been his parolee for nine months and he had monitored the victim's adjustment to society after being released from the prison. He also testified that the victim had become more open and candid during their relationship and that, based on his experience, the witness thought that the victim was honestly trying to cooperate. The inference created by the testimony is that the victim was changing his past ways and was likely to be a successful parolee. However, Panebeouf also testified during direct that the victim had violated the terms of his parole by leaving the state during the period between their last visit and the victim's death. Panebeouf also stated that he never saw the victim with a weapon and that he was never fearful of the victim.

■ Defendant claimed he killed in self-defense. Panebeouf's testimony that he never saw the victim with a gun and was not fearful of the victim was relevant to that issue. The State had the burden of showing that the killing was not in self-defense. N.M.U.J.I.Crim. 41.41; N.M.S.A. 1978. All the other testimony regarding the victim's parole prospects was irrelevant and injected a false issue into the trial.

■ The trial court allowed defense counsel to ask questions regarding the victim's parole problems and prior conviction involving violent conduct. The victim had violated the terms of his parole. Thus, defense counsel was able to impeach Panebeouf's characterization of the victim as an excellent parole prospect and also was able to bring out testimony on the issue of the victim's aggressive nature. Accordingly, defendant was not denied his right of confrontation.

■ Defendant also attempted to cross-examine Panebeouf regarding incidents of bad conduct of the victim which did not result in convictions. The trial court refused to permit this line of questioning. This type of evidence is relevant when self-defense is claimed, and its exclusion may result in reversible error. *State v.*

*Ewing*, 20 N.M.S.B.B. 829 (Ct.App.1981), *cert. granted* May 21, 1981. However, the exclusion was not error in this case. After defendant had made his tender, the trial court noted that evidence of the victim's prior bad acts was premature in that the jury had not heard the facts of the shooting at that time. Thus, self-defense was not in issue. Therefore, evidence which tended to show that the victim may have been the first aggressor or that defendant reasonably feared the victim was not material at the time.

The extent of cross-examination is largely within the discretion of the trial court. *State v. Curtis*, 87 N.M. 128, 529 P.2d 1249 (Ct.App.1974). Under the facts of this case the trial court did not abuse its discretion.

*Involuntary Manslaughter*

This issue involves two parts, 1) whether defendant was put on notice when charged with second degree murder of the State's intention to seek a conviction of involuntary manslaughter by a negligent act, and 2) whether there was sufficient evidence to justify an instruction of involuntary manslaughter by a negligent act. At trial, defendant objected to the giving of the instruction on the grounds that he did not have notice that the State would seek a possible conviction of involuntary manslaughter and that involuntary manslaughter was not a necessarily included offense. Accordingly, we only review those contentions. N.M.R.Crim.P. 41(d), N.M.S.A.1978 (Repl.1980).

1. *Notice*

The New Mexico Supreme Court in *State v. McFall*, 67 N.M. 260, 354 P.2d 547 (1960), stated: "This court held as long ago as *State v. Burrus*, supra, decided in 1934, that manslaughter is one of the four kinds of homicide, and that it is included within a charge of murder." This language was quoted with approval in *State v. La Boon*, 67 N.M. 466, 357 P.2d 54 (1960).

In *State v. Burrus*, 38 N.M. 462, 35 P.2d 285 (1934), under statutes essentially the same as those today, the court, in discussing necessarily included offenses as related to murder, stated:

It is readily to be perceived that the two offenses are distinct in the sense that manslaughter was not committed in committing the higher offense of murder. If murder was committed, there was no manslaughter. But that is not the point. The lesser need not be committed in the perpetration of the greater. The commission of the lesser need only be "necessarily included" in the offense charged. The charge that there was an unlawful killing from malice aforethought, which constitutes murder, embraces the several elements, the killing, the unlawfulness of it, and the malice of it. On each element the accused is put to trial. As to any of them the proof may fail. If there was no killing or if it was not unlawful, there is no guilt. If there was a killing and it was unlawful but without malice, there is guilt of manslaughter. In that sense, murder as defined in law necessarily includes manslaughter as defined in law.

■ We hold that involuntary manslaughter is a necessarily included offense of second degree murder. We do so on the authority of *Burrus, supra; La Boon, supra*; and *McFall, supra.*

Defendant's reliance on *State v. Medina*, 87 N.M. 394, 534 P.2d 486 (Ct.App.1975), is distinguishable in that the crimes are different. That case discussed whether possession of marijuana was a necessarily included offense within the offense of distributing marijuana. Thus, it was not controlled by *Burrus, supra; La Boon, supra*; or *McFall, supra.*

*Smith v. State*, 89 N.M. 770, 558 P.2d 39 (1976), does not propose a contrary result. As it relates to the instant case, *Smith* simply holds there must be evidence of the crime to sustain the conviction.

Accordingly, defendant was on notice that he could be charged with involuntary manslaughter. *See, State v. Burrus, supra.*

2. *Evidence*

■ Since we hold that involuntary manslaughter is a necessarily included offense of second degree murder, we must determine if there was evidence to support

the giving of N.M.U.J.I. 41.41, *supra. Smith v. State, supra.*

Defendant's recitation of the facts in his brief is sufficient to justify the giving of the State's requested instruction on involuntary manslaughter by negligent means. *State v. Armijo*, 90 N.M. 614, 566 P.2d 1152 (Ct.App.1977). Those facts are:

Viewed in the light most favorable to the State, the testimony indicated that there had been a heated argument between the deceased and Barry Hall inside the bar. The Defendant was mainly involved as the peacemaker. As the Defendant, deceased, and Barry Hall left the bar, a brief shouting match erupted between Defendant and deceased. Defendant was standing at the driver's side of the pickup. The deceased and Hall were standing on the passenger's side. The argument continued between Edwards and the deceased. The Defendant opened the driver's door, moved the seat forward, and pulled out a rifle. He moved toward the rear of the truck as the deceased moved to the rear on his side. The Defendant indicated that he would not fight the victim, but that he would shoot him. The witness Hall saw Edwards inserting the clip into the rifle. The deceased grabbed the rifle barrel as it was pointed at him and a struggle ensued. Three shots were fired. One shot entered the pickup truck. One shot entered the deceased's knee. The final and fatal shot entered his abdomen. The Defendant testified that he was sure that he had fired the shot which entered the deceased's knee. He also testified that he was unsure as to how the victim had been shot in the abdomen.

Affirmed.

IT IS SO ORDERED.

LOPEZ and DONNELLY, JJ., concur.