## STATE V. MAES

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**ELOY MAES,**
**Defendant-Appellant.**

Docket No. A-1-CA-34743
COURT OF APPEALS OF NEW MEXICO
April 4, 2019

APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY, James Lawrence Sanchez, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Walter M. Hart III, Assistant Attorney General, Albuquerque, NM, for Appellee

L. Helen Bennett, P.C., L. Helen Bennett, Albuquerque, NM, for Appellant

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR:  J. MILES HANISEE, Judge, JACQUELINE R. MEDINA, Judge

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Defendant Eloy Maes appeals his conviction for voluntary manslaughter on the ground that his constitutional right to notice of the charges against him was violated when the district court permitted the State to amend the indictment on the fourth day of trial. He also argues that the mid-trial amendment of the indictment was contrary to Rule 5-204(C) NMRA. We conclude that neither Defendant's constitutional right to notice nor Rule 5-204(C) was violated, and thus affirm.

**Background**

**{2}**     A grand jury indictment charged Defendant with murder in the first degree in violation of NMSA 1978, Section 30-2-1 (1994), upon allegations that Defendant "did kill, with the deliberate intention to take away the life of [the victim]." He was also charged with aggravated battery resulting in great bodily harm and tampering with evidence. *See* NMSA 1978, § 30-3-5 (1969); NMSA 1978, § 30-22-5 (2003).

**{3}**     At the opening of the fourth day of trial, the State notified the district court that it intended to amend the indictment to charge second-degree, rather than first-degree, murder. After discussing with counsel the lesser included charges of first-degree murder, the district court reserved decision on the amendment issue, stating that it would resolve the issue after additional argument and in the context of the jury instructions. The next day, the district court noted that the State had included "step down instructions" in its proposed jury instructions. While Defendant conceded that second-degree murder is a lesser included offense of first-degree murder, he argued that voluntary manslaughter is not. Following a lengthy colloquy between the district court and counsel, the court again deferred decision on the amendment issue until it determined the appropriate jury instructions after the close of evidence. The State rested its case later that day, and the district court took up the State's motion to amend the indictment. Defendant again objected to the addition of voluntary manslaughter to the indictment, renewing his argument that it is not a lesser included offense of the original charge of first-degree murder. The district court disagreed and granted the State's amendment motion, stating that it "d[id not] see the prejudice in terms of [Defendant] being blind-sided" because Defendant would be "preparing for the same thing, it's the same argument [by the State]." It then granted Defendant's motion for a directed verdict dismissing the first-degree murder charge but denied the motion as to second-degree murder and voluntary manslaughter. After Defendant, the only defense witness, testified, the district court instructed the jury on both second-degree murder and, over Defendant's objection, voluntary manslaughter. Defendant appeals his conviction of voluntary manslaughter.[1]

**Discussion**

**{4}**     On appeal, Defendant frames his argument in the following general terms: "The [d]istrict [c]ourt erred in allowing the State to amend the indictment mid-trial, allowing the State to abandon its first-degree murder charges and instead instruct the jury on second-degree murder and voluntary manslaughter." Defendant's broadly-stated assignment of error requires us to pursue two related, but distinct, avenues of inquiry, the first related to the amendment of the indictment, and the second bearing upon the jury instructions. As to the amendment of the indictment, "[a] defendant in a criminal case is entitled to know what he is being charged with and to be tried solely on those charges." *State v. Johnson*, 1985-NMCA-074, ¶ 26, 103 N.M. 364, 707 P.2d 1174; U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . .

---

[1]Defendant does not appeal his convictions for aggravated battery or tampering with evidence.

be informed of the nature and cause of the accusation[.]"). A defendant is provided with constitutionally-adequate notice of any lesser included offenses of the crime or crimes charged in an indictment. *State v. Collier*, 2013-NMSC-015, ¶ 35, 301 P.3d 370 ("This Court has long recognized that notice of a criminal charge necessarily includes notice of any lesser included offenses."). Consistent with this principle, Rule 5-204(A) provides that "[t]he court may at any time prior to a verdict cause the complaint, indictment or information to be amended in respect to any such defect, error, omission or repugnancy if no additional or different offense is charged and *if substantial rights of the defendant are not prejudiced*." (Emphasis added.) Similarly, Rule 5-204(C) provides that "[n]o variance between those allegations of a[n] . . . indictment . . . which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance *prejudices substantial rights of the defendant*" and that "[t]he court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence." (Emphasis added.) An amendment—even a mid-trial amendment—to the indictment "is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070. In addition, "[t]he mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction." *Id.* (internal quotation marks and citation omitted).

**{5}** Similar principles obtain with respect to jury instructions. In this regard, it is settled law that the district court may instruct the jury on, and the defendant may be convicted of, uncharged crimes as long as those crimes are lesser included offenses of the charged crime. *Johnson*, 1985-NMCA-074, ¶ 26 (stating that "[i]t is improper to instruct the jury as to a crime not formally charged [unless] that crime is . . . a lesser included offense of the crime formally charged"). Indeed, Rule 5-611(D) NMRA expressly provides that "[i]f so instructed, the jury may find the defendant guilty of an offense necessarily included[2] in the offense charged[.]" Hence, no formal amendment of the indictment is necessary in order to instruct the jury on or convict the defendant of a crime that is included within the charged crime. *See State v. Gallegos*, 1989-NMCA-066, ¶ 50, 109 N.M. 55, 781 P.2d 783 ("The trial court could have instructed on all lesser included offenses supported by the evidence, even though defendant objected to the instruction[,]" even though the lesser included offenses were not named in the indictment).

**{6}** Defendant contends that the amendment of the indictment on the fourth day of trial was improper because Rule 5-204 did not permit the addition of the new charges of second-degree murder and voluntary manslaughter. He also argues that the amendment deprived him of notice of and the ability to defend against the two new charges, contrary to the dictates of the Sixth Amendment. Since Defendant does not assert that the New Mexico Constitution provides greater protections than those afforded by the federal Constitution, we assume without deciding that the New Mexico

---

[2] In State v. Meadors, the New Mexico Supreme Court stated that it "use[d] the terms 'lesser[]included' and 'necessarily[]included' interchangeably." 1995-NMSC-073, ¶ 5, n.2, 121 N.M. 38, 908 P.2d 731.

Constitution provides the same protection. *Meadors*, 1995-NMSC-073, ¶ 4 n.1 (stating that "the Sixth Amendment's Notice Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause" and that, where the defendant relied only on the Sixth Amendment on appeal, it would "assume without deciding that the New Mexico Constitution provides the same protection"); *see* N.M. Const. art. II, § 14. We review de novo a district court's application of Rule 5-204(A) and its determination of whether an offense is a lesser included offense of that which is charged. *See State v. Roman*, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852; *State v. Hernandez*, 1999-NMCA-105, ¶ 24, 127 N.M. 769, 987 P.2d 1156.

**{7}**     We first define the scope of our review. Because second-degree murder is statutorily defined as  a lesser included offense of the first-degree murder charge set out in the indictment, *see* § 30-2-1(B), amendment insofar as it related to second-degree murder was proper under Rule 5-204(A) since "no additional or different offense [was] charged[.]" *Id.* Indeed, Defendant conceded as much at trial. Consequently, although Defendant does not distinguish between second-degree murder and voluntary manslaughter on appeal, we understand his arguments to be limited solely to voluntary manslaughter.

**{8}**     We discern no error in amending the indictment or in instructing the jury on voluntary manslaughter because it was necessarily included within the charges in the original indictment and Defendant had adequate notice of the need to defend against it. New Mexico courts have concluded multiple times that voluntary manslaughter is necessarily included within a murder charge. Nearly ninety years ago, our Supreme Court held as a matter of first impression that "a conviction for voluntary manslaughter, where there is evidence to sustain it, can be had under an information or indictment charging [first-degree] murder" because "[v]oluntary manslaughter is necessarily included within a charge of murder." *State v. Parker*, 1930-NMSC-004, ¶¶ 1, 3, 6, 34 N.M. 486, 285 P. 490 (emphasis omitted). In *State v. Burrus*, our Supreme Court again held that "murder as defined in law necessarily includes manslaughter as defined in law" in spite of the differences in the mens rea elements of the two crimes. 1934-NMSC-036, ¶ 31, 38 N.M. 462, 35 P.2d 285. In both *Parker* and *Burrus*, the defendants were, like Defendant herein, charged with first-degree murder but convicted of voluntary manslaughter. *Parker*, 1930-NMSC-004, ¶ 1; *Burrus*, 1934-NMSC-036, ¶¶ 1, 3. Since *Burrus*, our courts have repeatedly recognized that a charge of murder generally encompasses various degrees of the crime. *See, e.g.*, *State v. Omar-Muhammad*, 1987-NMSC-043, ¶ 23, 105 N.M. 788, 737 P.2d 1165 (stating that the New Mexico Supreme Court has "analyzed felonious homicide, the unlawful taking of human life, as a 'generic offense' encompassing several degrees or forms"); *State v. La Boon*, 1960-NMSC-118, ¶ 10, 67 N.M. 466, 357 P.2d 54 ("Manslaughter is included in the charge of murder."); *State v. McFall*, 1960-NMSC-084, ¶ 12, 67 N.M. 260, 354 P.2d 547 (stating that "manslaughter is one of the four kinds of homicide, and . . . it is included within a charge of murder"). In *Smith v. State*, our Supreme Court clarified the law by noting that manslaughter may "properly be said to be 'included' in a charge of murder" only "[u]nder appropriate circumstances, i.e. under a charge of murder where there is evidence that the defendant acted as a result of sufficient provocation[.]" 1976-NMSC-085, ¶ 16, 89

N.M. 770, 558 P.2d 39 (internal quotation marks and citation omitted). Although the *Smith* Court reversed the defendant's conviction for voluntary manslaughter, it did so on the ground that the evidence did not support the conviction. *Id.* ¶ 30. The *Smith* holding therefore did not negate the general proposition expressed in *Burrus*, *Omar-Muhammad*, *La Boon*, or *McFall*. Instead, it "simply h[eld] there must be evidence of the crime to sustain the conviction." *State v. Edwards*, 1981-NMCA-119, ¶¶ 25, 27, 97 N.M. 141, 637 P.2d 572 (relying on *Burrus*, *La Boon*, and *McFall* in holding that involuntary manslaughter was a necessarily included offense of second degree murder and rejecting the defendant's argument that the second-degree murder charge did not provide notice that he could be convicted of involuntary manslaughter). More recent cases refer to voluntary manslaughter as a lesser included offense of first-degree or second-degree murder, albeit without analysis. *See, e.g.*, *State v. Jernigan*, 2006-NMSC-003, ¶ 22, 139 N.M. 1, 127 P.3d 537 ("[V]oluntary manslaughter is a lesser included offense of second-degree murder[.]"); *Sells v. State*, 1982-NMSC-125, ¶ 7, 98 N.M. 786, 653 P.2d 162 ("The defendant is entitled to an instruction on voluntary manslaughter as a lesser included offense of murder in the first degree if there is evidence to support, or tending to support, such an instruction."). This body of case law, viewed as a whole, provides notice that lesser degrees of homicide may be included within a first-degree murder charge.

**{9}**    The State suggests that *Burrus* and its progeny are no longer valid in light of *Meadors*, 1995-NMSC-073, ¶ 12, which set forth the test for determining whether an uncharged offense is included within a charged crime when the State requests a jury instruction on the uncharged crime. *See State v. Munoz*, 2004-NMCA-103, ¶ 18, 136 N.M. 235, 96 P.3d 796 (noting that a case applying a strict elements test to determine whether a crime was included within another had "been overtaken by the Supreme Court's subsequent adoption of the cognate test [in *Meadors*]"). We need not determine as a matter of law whether the analysis in *Meadors* supplants the general statements of law in cases following *Burrus* because, even under the *Meadors* test, the district court did not err in instructing the jury on voluntary manslaughter in this case.

**{10}**    Under *Meadors*, an offense is included within a charged offense "when the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime." 1995-NMSC-073, ¶ 12. An offense is also included in a greater offense when the following conditions are met:

> (1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3)the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* The first factor of the *Meadors* test "protect[s] the defendant's right to notice of the charges against which he must defend." *Munoz*, 2004-NMCA-103, ¶ 12. In evaluating this factor, courts examine the "accusatory instrument" to determine if "the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense." *Meadors*, 1995-NMSC-073, ¶ 17. If so, "the defendant should be fully aware of the possible offenses for which he or she may face prosecution and should have ample opportunity to prepare a defense." *Id.* The second and third factors reflect the principle that an instruction is proper only if warranted by the evidence. *See Munoz*, 2004-NMCA-103, ¶¶ 16-17 (applying the second and third factors); *see also Smith*, 1976-NMSC-085, ¶ 16 (evidence of provocation is required for a voluntary manslaughter conviction).

**{11}** In *Meadors*, after both parties had rested, the State requested a jury instruction on aggravated battery as a lesser included offense of attempted first-degree murder. 1995-NMSC-073, ¶ 4. Similar to Defendant herein, the *Meadors* defendant objected on the ground that "aggravated battery is not a lesser[]included offense of attempted murder and that such an instruction would violate his [Sixth Amendment] constitutional right to receive notice of the crime charged." *Id.* The district court disagreed and gave the State's instruction to the jury, which convicted the defendant of aggravated battery. *Id.* ¶ 1, 4. On appeal, the *Meadors* Court held that, although the statutory elements of aggravated battery differed from the elements of attempted murder, *id.* ¶ 4, the district court properly instructed the jury on aggravated battery because "the [s]tate's theory of the case differed from the defendant's theory only on the issue of his mental state." *Id.* ¶ 13. The defendant "testified that he had thrown [a] cup of gasoline down in disgust, inadvertently splashing [the victim] and that he had then struck [a] match to protect himself from [the victim]." *Id.* ¶ 13. "Based upon the allegations in the indictment and the evidence adduced at trial, a jury could reasonably conclude that [the defendant] had intended to throw gasoline on [the victim] and ignite him, but that he had lacked the intent to take [the victim]'s life." *Id.* Thus, the jury could conclude that the evidence "support[ed] a conviction of aggravated battery, but not of attempted murder." *Id.*

**{12}** Here, Defendant does not argue that the instructions were unsupported by the evidence. Indeed, Defendant states on appeal that he "went to great lengths to draw out evidence of provocation by [the victim]" at trial, thereby acknowledging that provocation was indeed put in issue. Moreover, Defendant also requested a self-defense instruction based on testimony that the victim "came at" him, and the district court agreed that the instruction was supported by the evidence. "When facts are present which give rise to a plea of self-defense, it is not unreasonable that if the plea fails, the accused should be found guilty of voluntary manslaughter." *State v. Melendez*, 1982-NMSC-039, ¶ 9, 97 N.M. 738, 643 P.2d 607 (alteration, internal quotation marks, and citation omitted). This is so because "provocation supporting a conviction for voluntary manslaughter[,]. . . is an act committed under the influence of an uncontrollable fear of death or great bodily harm, caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense." *Id.* (internal quotation marks and citation omitted). Therefore, "[w]here a defendant presents sufficient evidence to support a theory of self-defense, it raises a question of fact for the jury to resolve. If the

jury believes the argument, the defendant is acquitted." *State v. Abeyta*, 1995-NMSC-051, ¶ 17, 120 N.M. 233, 901 P.2d 164, *abrogated on other grounds by State v. Campos*, 1996-NMSC-043, ¶ 32 n.4, 122 N.M. 148, 921 P.2d 1266. However, "[i]f the jury rejects the theory of self-defense, it may still find the defendant acted under provocation of fear and may mitigate the charge of murder to the lesser charge of voluntary manslaughter." *Id.* Based on the evidence at trial and because Defendant does not argue otherwise, we conclude that provocation—the element distinguishing voluntary manslaughter from second-degree murder—was "sufficiently in dispute such that a jury rationally could acquit on [second-degree murder] and convict on [voluntary manslaughter]." *Meadors*, 1995-NMSC-073, ¶ 12; *see Jernigan*, 2006-NMSC-003, ¶ 20 ("When provocation is at issue, an instruction on voluntary manslaughter must be given."); UJI 14-210 NMRA, use note 4.

{13}    More germane to Defendant's argument, the *Meadors* Court also examined the indictment to determine whether the defendant "received meaningful notice that he faced liability for the crime of aggravated battery." 1995-NMSC-073, ¶ 19. In addition to the first-degree murder count, the indictment in *Meadors* alleged that the defendant "did maliciously or willfully start a fire or cause an explosion with the intent to destroy or damage the residence which belonged to [the victim], which caused great bodily harm to [the victim]" and that the defendant "did maliciously explode or attempt to explode or place an explosive with the intent to injure or intimidate or terrify another or to damage another[']s . . . property." *Id.* ¶ 19 (omission, internal quotation marks, and citation omitted). The Court stated, "All three counts alleged that the conduct occurred on [the same date], and there [w]as never . . . any doubt that the three counts referred to the same conduct and that this conduct—dousing [the victim] with gasoline and igniting him—was the act . . . to which [the first-degree murder count] referred." *Id.* The Court concluded that, viewed together, "the three counts of the indictment put [the defendant] on notice that he would need to defend against the essential elements of an unlawful touching and serious bodily injury to the victim." *Id.*

{14}    By a parity of reasoning, the indictment originally filed in this case gave Defendant adequate notice that he might face a voluntary manslaughter charge. The first count of the indictment alleged that Defendant "did kill, with the deliberate intention to take away the life of [the victim]." The second count alleged that Defendant committed aggravated battery on the same date by "touch[ing] or apply[ing] force to [the victim], intending to injure that person or another, and caused great bodily harm to or acted in a way that would *likely result in death* or great bodily harm to [the victim]." (Emphasis added.) As in *Meadors*, these allegations put Defendant on notice that he would need to defend against "unlawful killing of a human being," the actus reus of voluntary manslaughter. Moreover, the first-degree murder charge alleged an intent to kill, whereas the aggravated battery charge alleged an intent to injure. *Compare* § 30-2-1(A)(1) ("Murder in the first degree is the killing of one human being by another . . . by any kind of willful, deliberate and premeditated killing[.]"), *with* § 30-3-5(A) ("Aggravated battery consists of the unlawful touching or application of force to the person of another with intent to injure that person or another."). To commit voluntary manslaughter "a defendant [must have] intended to cause the harmful act," *Abeyta*, 1995-NMSC-051, ¶

24, with knowledge that his "acts create[d] a strong probability of death or great bodily harm." UJI 14-220 NMRA; *State v. Dominguez*, 2005-NMSC-001, ¶ 14, 137 N.M. 1, 106 P.3d 563, *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426. Thus, the state of mind required for voluntary manslaughter falls between those of the crimes alleged in the indictment. We conclude that the charges in the original indictment sufficed to alert Defendant that he could face a charge of voluntary manslaughter.

**{15}** Finally, Defendant asserts that he was prejudiced by the amendment of the indictment because "[d]efense counsel would have added an evidentiary dimension to his defense designed to meet the second degree murder and voluntary manslaughter theory had [his c]ounsel known at the outset what [Defendant] was up against." In light of our conclusion that Defendant had sufficient notice of the potential lesser included charges, "Defendant's mere speculation of how he would have conducted his defense differently does not rise to the level of prejudice that is required for an acquittal." *State v. Branch*, 2010-NMSC-042, ¶ 21, 148 N.M. 601, 241 P.3d 602, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. To the extent Defendant argues that the amendment here is reversible per se, we disagree. Defendant points to *Hunter v. New Mexico*, 916 F.2d 595 (10th Cir. 1990), in which the Tenth Circuit stated that when an amendment "actually modifies an essential element of the offense charged . . . . it is reversible per se." *Hunter* is inapposite for at least two reasons. First, it did not involve or address lesser included charges. Second, the trial court's error in that case was in instructing the jury that it could find the defendant guilty for acts not alleged in the indictment, thereby depriving the defendant of the ability to defend against those allegations. *Id.* at 599 ("The specific inquiry is whether the jury was permitted to convict the defendant upon a set of facts distinctly different from that set forth in the indictment." (internal quotation marks and citation omitted)). In contrast, here the instruction on voluntary manslaughter was based on the same conduct alleged in the indictment and, as discussed above, the indictment gave Defendant sufficient notice of the lesser included charges he faced.

**Conclusion**

**{16}** For the foregoing reasons, we conclude that the district court did not err in permitting amendment of the indictment under Rule 5-204(C) and that Defendant's right to notice of the charges against him was not violated when the district court instructed the jury on voluntary manslaughter as a lesser included offense of second-degree murder. We affirm Defendant's conviction for voluntary manslaughter.

**{17}   IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**